# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

IN RE THE DEPENDENCY OF ) No. 69713-7-I
M.P., a minor, ) Consolidated w/ No. 69714-5-I
)
STATE OF WASHINGTON, )
DEPARTMENT OF SOCIAL & HEALTH )
SERVICES, )
         Respondent, ) ORDER GRANTING
) MOTION FOR
) CLARIFICATION AND WITHDRAWING
      v. ) AND SUBSTITUTING OPINION
)
PAUL PARVIN and LESLIE )
BRAMLETT, )
)
         Appellants. )

Respondent, Department of Social and Health Services has filed a motion for clarification of the nature of the remand ordered in the opinion filed on October 20, 2014, and the court has determined that the motion for clarification be granted;

Now therefore, it is hereby

ORDERED that the motion for clarification is granted to the effect that the matter is remanded for a new trial.

IT IS FURTHER ORDERED that the opinion filed on October 20, 2014 is withdrawn and a substitute published opinion be filed.

DATED this 22nd day of December 2014.

FOR THE COURT:

_Spearman, C.J._

_Trickey, J._

_Verellen, J._

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN RE THE DEPENDENCY OF<br>M.P., a minor, | ) ) ) | No. 69713-7-I<br>Consolidated w/ No. 69714-5-I |
| STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL & HEALTH<br>SERVICES, | ) ) ) ) | |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | |
| PAUL PARVIN and LESLIE<br>BRAMLETT, | ) ) | PUBLISHED OPINION |
| Appellants. | ) ) | FILED: December 22, 2014 |

SPEARMAN, C.J. — After a trial on the State's petition for guardianship as to M.P., the trial court entered orders establishing the guardianship and dismissing the dependency as to M.P. The parents of M.P., Paul Parvin and Leslie Bramlett, appeal the trial court's orders. Bramlett argues that the trial court erred when it excluded two defense witnesses without conducting a Burnet[1] inquiry on the record. She argues, in the alternative, that her lawyer provided ineffective assistance when the lawyer failed to give proper notice of the excluded witnesses. Both parents also contest the trial court's findings of fact and conclusions of law. Because the trial court failed to make findings on the record regarding the three Burnet factors prior to excluding Bramlett's witnesses, we reverse the orders establishing the guardianship and dismissing the dependency. We also conclude that RCW 13.36.040(2)(c)(iv) requires the State to prove that

---

[1] Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997).

all ordered and necessary services have been "expressly and understandably" offered or provided to the parents.

FACTS

Paul Parvin and Leslie Bramlett are the natural parents of M.P. In June 2010, M.P. was removed from his parents' custody based on allegations that M.P. was neglected while in their care. The State, through the Department of Social and Health Services, alleged Parvin and Bramlett were unable to parent M.P. because they suffered from mental illness and substance abuse and had a history of domestic violence. In August 2010, a dependency was established by agreed order as to both parents. The court ordered both parents to participate in mental health services, parenting counseling, urinalysis testing, and other services.

Approximately a year later, the State determined that neither parent had made sustained progress addressing their parental deficiencies and, on August 31, 2011, filed a petition for termination of parental rights. Trial on the petition was initially set for January 17, 2012. The court issued an Order Setting Case Schedule, which established December 1, 2011 as the discovery cutoff date.

The trial date was continued several times. First, on December 21, 2011, upon Parvin's motion, the trial court continued the trial date to March 5, 2012, but specifically declined to amend the case schedule. On February 29, 2012, upon the joint motion of Parvin and Bramlett, the trial court continued the trial date until April 30, 2012, with no further amendment to the case schedule. On April 10, 2012, the State moved to substitute a guardianship petition for the termination petition. The motion was granted and trial was continued to May 21, 2012. The

2

court ordered that the termination case schedule and guardianship case schedule be consolidated for trial. On June 8, 2012, the parties filed an agreed motion to continue the trial date after the State mistakenly tendered discovery responses containing unredacted privileged materials and work product. The trial court continued the trial to August 13, 2012, with a pretrial conference to be held on August 3, 2012. This order made no mention of the case schedule.

One month later, on July 9, 2012, Bramlett was assigned new defense counsel. On August 2, 2012, Bramlett moved the court for another continuance of the trial date to allow her new attorney to prepare for trial. The next day, Bramlett and the State, through their attorneys, appeared at the August 3, 2012 pretrial conference and argued the motion. At the conclusion of the hearing, the trial court entered two orders. One order, entitled "pretrial conference order," amended the deadlines for pretrial disclosures by all parties, specifying that updated discovery must be provided to opposing parties on August 10, 2012, and that witness lists must be disclosed by August 13, 2012. The other order continued trial to August 27, 2012, indicated that no further continuances would be granted, and stated that "[n]o amended case schedule is necessary for this case." Clerk's Papers (CP) at 854.

On August 14, 2012, two weeks before trial and one day after the August 13 disclosure date established by the pretrial conference order, Bramlett served the State with a witness list that included, for the first time, Dr. Makiko Guji. Bramlett claimed Dr. Guji had treated her for the past year and would testify that Bramlett had made good progress in treatment. Dr. Guji's involvement in Bramlett's treatment had never been disclosed to the assigned social worker or

3

the court. No records, reports, evaluations, qualifications, or other information outlining the expected testimony was provided to the State at that time.

Two days later, on August 16, 2012, Bramlett filed an amended witness list that included a second previously undisclosed witness, Dr. Carmela Washington-Harvey.[2] Bramlett represented that Dr. Washington-Harvey was prepared to opine that Bramlett was able to capably parent M.P.

The State filed a motion to exclude the testimony of both Dr. Guji and Dr. Washington-Harvey because neither witness had been disclosed in compliance with the case schedule. M.P.'s Court Appointed Special Advocate (CASA) joined in the State's motion, asserting that she had just been apprised that Bramlett intended to call Dr. Guji and Dr. Washington-Harvey as expert witnesses and that she had never been advised that an evaluation by Dr. Washington-Harvey was underway. The trial court granted the State's request.

The case proceeded to trial on September 13, 2012. At the end of trial, the court granted the State's guardianship petition and entered an order appointing M.P.'s maternal aunt, Kim Kerrigan, as M.P.'s guardian. The court also entered an order dismissing the dependency as to each parent solely on the basis that the guardianship had been established as to M.P. The court also reduced the parents' visitation from three unsupervised visits per week to one supervised visit per week. Both parents appeal.

---

[2] The parties dispute whether this witness list was served on the State contemporaneously. The State maintains that it was not served with this witness list at the time of filing and only learned that Dr. Washington-Harvey would be called as a witness when it was provided a copy of her evaluation on August 25, 2017.

4

## DISCUSSION

### I.

Bramlett contends the trial court abused its discretion when it excluded the testimony of Dr. Guji and Dr. Washington-Harvey as a sanction for discovery violations. She argues that because the trial court failed to make the necessary findings under Burnet before excluding her witnesses she is entitled to a new trial.

The State contends Burnet is not applicable in this case because only testimony was excluded. It argues that a trial court need only consider the Burnet factors when it imposes the "most severe" sanctions of dismissal or default. Brief of Respondent at 16. The State also argues that even if Burnet is applicable, the trial court did not abuse its discretion by excluding Bramlett's witnesses because the record shows the trial court gave sufficient consideration to the relevant factors. We reject the State's arguments and agree with Bramlett.

A trial court has broad discretion when imposing sanctions for discovery violations and we will not disturb a trial court's determination in this regard "'except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Burnet, 131 Wn.2d at 494. (quoting Associated Mortgage Investors v. G.P. Kent Constr. Co., 15 Wn. App. 223, 229, 548 P.2d 558 (1976). When the trial court chooses to impose one of the harsher remedies allowable under the discovery rules, it must be apparent from the record that the trial court explicitly considered whether a lesser sanction would probably have sufficed, and that it found the disobedient party's refusal to obey a discovery order was willful or deliberate and the violation substantially prejudiced the opponent's ability to prepare for trial. Id.

The State relies on Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 132 P.3d 115, 118 (2006) to argue that the exclusion of testimony is not one of the "harsher remedies" permitted under the discovery rules and thus not subject to Burnet. But neither Mayer nor subsequent cases addressing this issue supports the State's position. In Mayer, the Supreme Court explained which discovery sanctions trigger consideration of the Burnet factors as follows:

> [T]he case law that the Burnet court relied on established that before a trial court may impose a CR 37(b)(2)(B) sanction excluding testimony, a showing of willfulness was required; that, for 'one of the harsher remedies allowable under CR 37(b),' the record must clearly state the reasons for the sanction; and that for the 'most severe' CR 37(b)(2)(C) sanction of dismissal or default, the record must show three things—the trial court's consideration of a lesser sanction, the willfulness of the violation, and substantial prejudice arising from it. However, by elliptically quoting the three-part test of [Snedigar v. Hodderson, 53 Wn. App. 476, 487, 768 P.2d 1 (1989), rev'd in part, 114 Wn.2d 153, 786 P.2d 781 (1990)], the Burnet court extended the test beyond the 'most severe' sanctions of dismissal or withdrawal to encompass 'the harsher remedies allowable under CR 37(b)'—a phrase that, at a minimum, means a CR 37(b)(2)(B) sanction excluding testimony but that, more broadly, encompasses any and all of the sanctions described in CR 37(b)(2)(A)-(E).

Mayer, 156 Wn.2d at 688. Thus, the Mayer court made explicit the requirement that trial courts consider the Burnet factors prior to excluding witness testimony as a discovery sanction. The court reiterated this rule in Blair v. Ta-Seattle East No. 176, 171 Wn.2d 342, 349, 254 P.3d 797 (2011) ("Mayer clearly held that trial courts do not have to utilize Burnet when imposing *lesser* sanctions, such as monetary sanctions, but must consider its factors before imposing a harsh sanction such as witness exclusion"); Teter v. Deck, 174 Wn.2d 207, 217, 274 P.3d 336 (2012) ("Discovery sanctions that trigger consideration of the Burnet factors include exclusion of witness testimony") (citing Mayer, 156 Wn.2d at 690);

and Jones v. City of Seattle, 179 Wn.2d 322, 344, 314 P.3d 380 (2013) (finding a Burnet violation where the trial court properly considered prejudice, but not willfulness or lesser sanctions prior to exclusion of late-disclosed witnesses). We conclude that Burnet is applicable to this case and turn to whether the trial court's exclusion of Bramlett's witnesses is supported by adequate findings.

The trial court based its conclusion that exclusion of Bramlett's witnesses was proper on considerations of public policy and its interpretation of King County Court Local Civil Rules 26(k)(4). The court found that as a matter of policy, indigent defendants who obtain experts ex parte, as in this case, should bear the burden of timely disclosure of those witnesses, at the risk of exclusion. It further determined that "King County's civil rules specifically prohibit witnesses to be called to testify if they were not disclosed in accordance with the case schedule."[3] (Emphasis added). CP at 1147. But the requisite findings under Burnet are absent from the record.

The State argues the record is sufficient for us to conclude that the third Burnet factor, willfulness, was established and that the other two factors were explicitly found by the trial court. The arguments are unpersuasive.

First, it is incumbent upon the trial court to make the requisite findings as to all three factors. Teter, 174 Wn.2d at 216-17. The State concedes the trial court made no finding as to willfulness but urges that we may do so based on the

---

[3] We note that LCR 26(k)(4) provides that "[f]ailure to comply with ... the court's Order Setting Case Schedule may result in sanctions, including the exclusion of witnesses." (Emphasis added). Generally, when the term "may" is used in a statute or court rule, it is an indication that a referenced course of action is discretionary rather than mandatory. See, e.g., In re Marriage of Kim, 179 Wn. App. 232, 250-51, 317 P.3d 555, review denied, 180 Wn.2d 1012, 325 P.3d 914 (2014). The trial court's conclusion that excluding the witnesses was mandatory under the local rule was erroneous.

record from below. The State is incorrect. The Supreme Court has explicitly "reject[ed] the premise 'that an appellate court can consider the facts in the first instance as a substitute for the trial court findings that our precedent requires.'" Teter, at 217-18 (quoting Blair, 171 Wn.2d 342, 351).

Second, even if we were to do as the State suggests and find that the discovery violation was wilful, it would be unavailing because the trial court's consideration of whether a lesser sanction would suffice fails to satisfy Burnet. Generally, the purpose of sanctions is to deter, to punish, to compensate, to educate, and to ensure that the wrongdoer does not profit from the wrong. Burnet, 131 Wn.2d at 496, citing Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp., 122 Wn.2d 299, 356, 858 P.2d 1054 (1993). Here, the trial court considered the State's alternative request for attorney fees and costs as a sanction and concluded that such a sanction was inappropriate. It reasoned that it made no sense to reallocate tax dollars from one public agency (the public defender) to another (the attorney general). But the court did not explain why such a reallocation of funds and the resulting burden on the public defender's budget would not serve to deter similar conduct in the future or meet any of the other purposes of imposing a sanction.

Additionally, while the trial court correctly found the State's and the CASA's ability to prepare for trial would be substantially prejudiced if Bramlett's witnesses testified, it failed to adequately consider whether the lesser sanction of continuing the trial would be a sufficient remedy. The trial court concluded, without explanation, that it "would prejudice the [S]tate ... to continue the trial again." CP at 1147. But there is no indication in the record that the court

8

considered the length of any continuance necessary to allow the State to prepare for Bramlett's late-disclosed witnesses. Without this information, the court could not properly determine the extent of the prejudice, if any, that a delay would cause. Because the trial court did not articulate, in other than general terms, the nature of the prejudice a continuance would cause, we conclude it gave inadequate consideration to whether a lesser sanction would suffice.[4]

The erroneous exclusion of a party's witnesses is reversible error unless the error was harmless. Jones, at 356. In Jones, our supreme court applied, for the first time, a harmless error analysis to a Burnet violation.[5] The court held the error in that case was harmless because the excluded testimony was largely irrelevant or cumulative. Jones, at 356-57. Here, we are unable to determine whether the excluded testimony would have been cumulative, irrelevant, or otherwise inadmissible. The admissibility of the excluded testimony was not litigated below and there is little in the record to indicate, in more than general terms, the nature of the testimony expected to be elicited from the excluded witnesses. On this record, we are unable to say the exclusion of Bramlett's witnesses was harmless. Accordingly, the orders establishing the guardianship and dismissing the dependency must be reversed.

II.

Bramlett also argues that the trial court misinterpreted the guardianship statute and improperly lowered the State's burden of proof. Because the issue

---

[4] The State also points out that the trial court concluded that a continuance would violate M.P.'s right to timely permanency. But in the absence of any indication of the length of any necessary delay, the record does not support this conclusion.

[5] We note that Jones was decided after briefing was completed in this matter, but at our request, the parties did address the issue at oral argument.

may arise on remand we address it here. To establish a guardianship under RCW 13.36.040(2),[6] a court must find that each of the statutory elements have been proven by a preponderance of the evidence.[7] In re Dependency of A.C., 123 Wn. App. 244, 248, 98 P.3d 89 (2004).

RCW 13.36.040(2)(c)(iv) provides, in relevant part:

The services ordered under RCW 13.34.130 and 13.34.136 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

---

[6] RCW 13.36.040(2) provides:

(2) A guardianship shall be established if:

(a) The court finds by a preponderance of the evidence that it is in the child's best interests to establish a guardianship, rather than to terminate the parent-child relationship and proceed with adoption, or to continue efforts to return custody of the child to the parent; and

(b) All parties agree to entry of the guardianship order and the proposed guardian is qualified, appropriate, and capable of performing the duties of guardian ... or

(c)(i) The child has been found to be a dependent child...;

(ii) A dispositional order has been entered...;

(iii) At the time of the hearing on the guardianship petition, the child has or will have been removed from the custody of the parent for at least six consecutive months following a finding of dependency...;

(iv) The services ordered ... have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided;

(v) There is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and ...

(vi) The proposed guardian has signed a statement acknowledging the guardian's rights and responsibilities toward the child and affirming the guardian's understanding and acceptance that the guardianship is a commitment to provide care for the child until the child reaches age eighteen.

[7] Bramlett argues that the State had a burden of proving the statutory elements by clear, cogent, and convincing evidence. She is mistaken. Unlike parental termination cases, which apply the clear, cogent, and convincing evidence standard, guardianship need only be established by a preponderance of the evidence. See, In re A.C., supra.

By comparison, Washington's termination statute provides:

> (d) That the services ordered under RCW 13.34.136 have been <u>expressly and understandably</u> offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been <u>expressly and understandably</u> offered or provided;

RCW 13.34.180(1)(d) (emphasis added). Noting the difference between the two statutes, the trial court concluded that RCW 13.36.040(c)(iv) "does *not* require that services be 'expressly and understandably' offered or provided."[8] CP at 1043. We disagree.

The trial court's construction of a statute is an issue of law, which we review de novo. <u>State v. Wentz</u>, 149 Wn.2d 342, 346, 68 P.3d 282 (2003). A court interpreting a statute must discern and implement the legislature's intent. <u>Anthis v. Copland</u>, 173 Wn.2d 752, 756, 270 P.3d 574 (2012). Where the plain language of a statute is unambiguous and legislative intent is apparent, the reviewing court will not construe the statute otherwise. <u>Id.</u> Plain meaning may be gleaned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." <u>Id.</u> (citing <u>Dep't of Ecology v. Campbell & Gwinn, LLC</u>, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). If the statute is still "susceptible to more than one reasonable interpretation, then a court may resort to statutory construction, legislative history, and relevant case law for assistance in determining legislative intent." <u>Id.</u> (citing <u>Christensen v. Ellsworth</u>, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

---

[8] "Expressly and understandably" offering or providing services means, among other things, that services must be tailored to the parent's individual needs. <u>See, e.g.</u> <u>In re Dependency of T.R.</u>, 108 Wn. App. 149, 161, 29 P.3d 1275 (2001); <u>In re Dependency of H.W.</u>, 92 Wn. App. 420, 429-30, 961 P.2d 963 (1998).

Before 1998, the language of the termination statute, RCW 13.34.180(4), was identical in all relevant respects to the language at issue here in the guardian statute, RCW 13.36.040(2)(c)(iv). The termination statute, provided:

> (4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided.

LAWS OF 1997, CH. 280, § 2. Despite the absence of express statutory language mandating that services be "'expressly and understandably'" offered or provided, courts nevertheless interpreted former RCW 13.34.180(4) (1998) as containing such a requirement. See, e.g., In re Dependency of P.A.D., 58 Wn. App. 18, 792 P.2d 159 (1990) (concluding that the State must understandably offer remedial services by tailoring them to individual needs of the parents); In re Welfare of Hall, 99 Wn.2d 842, 850, 664 P.2d 1245 (1983) (requiring the State to expressly offer services by, minimally, providing the parents with a referral list). In 1998 the Legislature, in apparent recognition of those cases, amended the statute to add the words "expressly or understandably." LAWS OF 1998, CH. 314, § 4.

The legislature is presumed to be familiar with judicial interpretations of statutes and, absent an indication it intended to overrule a particular interpretation, amendments are presumed to be consistent with previous judicial decisions. State v. Bobic, 140 Wn.2d 250, 264, 996 P.2d 610 (2000). Hence, the legislature is presumed to have been aware, when it enacted the amended guardianship statute, that the language used implicitly includes a requirement that remedial services be expressly and understandably offered or provided. We find no reason, and the State offers none, to depart from earlier decisions

12

interpreting the nearly-identical language of former RCW 13.34.180(4). We conclude that in a guardianship proceeding under RCW 13.36.040(2), subsection (c)(iv) requires the State to prove that remedial services were expressly and understandably offered or provided to the parents.

III.

We reverse the orders establishing the guardianship and dismissing dependency, reinstate the dependency as to both parents and remand for a new trial.[9]

Reverse and remand.

_Spearman, C.J._

WE CONCUR:

_Trickey, J._

---

[9] In light of the grounds upon which we resolve this case, we need not address the remaining issues raised by the parties.