# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Dependency of: | No. 73610-8-I<br>(consolidated with No. 73611-6-I<br>and No. 73612-4-I) |
| A.A.B. (DOB: 06/12/2005)<br>A.R.B. (DOB: 06/12/2005)<br>E.B. (DOB: 07/20/2007), | |
| Minor children. | |
| ERIKA YRIZARRIS, | |
| Appellant, | DIVISION ONE |
| v. | |
| STATE OF WASHINGTON,<br>DEPARTMENT OF SOCIAL AND<br>HEALTH SERVICES, | UNPUBLISHED OPINION |
| Respondent. | FILED: March 14, 2016 |

LAU, J. – Erika Yrizarris appeals the trial court's order terminating her parental relationship with her three children, A.A.B., A.R.B. and E.B. Yrizarris contends that the trial court erroneously excluded the testimony of a late-disclosed expert witness. She also challenges several of the trial court's findings of fact and conclusions of law.

Because the trial court's exclusion of the witness, if error, was harmless, and because substantial evidence supports the trial court's findings, which in turn support the conclusions of law terminating Yrizarris' parental rights, we affirm.

FACTS

Yrizarris is the mother of six children: L.V-Y., V.Y., H.B., twins A.A.B. and A.R.B., and E.B. The Department of Social and Health Services (DSHS) became involved with Yrizarris in 2011 when law enforcement conducted a welfare check and found the mother's home to be chaotic and unsanitary. When Yrizarris was unable to consistently follow through with services provided to her, DSHS filed a dependency petition. In an agreed order of dependency and disposition entered January 23, 2012, the dependency court removed all six children from Yrizarris' care and ordered her to participate in a psychological assessment with a parenting component, work with a parent educator and a family preservation services provider, and maintain a safe and clean home.

Over the next three years, DSHS and other agencies offered or provided Yrizarris a number of services designed to improve her parenting skills and create a safe and stable environment for her children, including multiple types of in-home parenting education, a public health nurse, family preservation services, several different types of family therapy, a parent mentoring program, a substance abuse evaluation and intensive outpatient substance abuse treatment, urinalysis testing, mental health counseling, and a psychological evaluation with a parenting component. The dependency court held regular review hearings, frequently finding that Yrizarris

made no progress or only limited progress addressing the issues resulting in the children's out of home placement.

DSHS ultimately returned the three oldest children, L.V-Y., V.Y. and H.B., to Yrizarris' care.[1] H.B. was later removed a second time, and then returned again. But Yrizarris' social workers did not believe she was capable of parenting the younger children, and filed a petition to terminate Yrizarris' parental rights as to A.A.B., A.R.B. and E.B.[2] Following seven days of testimony, the trial court found that Yrizarris' parental deficiencies rendered her unfit to parent and that termination was in the children's best interests. Yrizarris appeals.

## ANALYSIS

### Exclusion of Witness

Yrizarris contends that she is entitled to a new trial because the trial court prohibited her from presenting the testimony of an expert witness without making the necessary findings identified in Burnet v. Spokane Ambulance, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). We disagree because the trial court's decision, if error, was harmless.

The dependency court issued a case schedule establishing a discovery cutoff date of 45 days prior to trial. The case schedule also provided that Yrizarris would be

---

[1] L.V-Y., V.Y., and H.B. were 15, 12, and 10, respectively, at the time of trial.

[2] A.A.B. and A.R.B. were nine years old and E.B. was seven years old at the time of trial. Their father was not involved in the dependency proceedings and his rights were terminated by default on August 11, 2015.

required to disclose the names of any expert witnesses and provide their reports 20 days prior to trial. Yrizarris did not file a witness list nor disclose the names of any expert witnesses.

On the first day of trial, the State called Dr. Evan Freedman, a clinical psychologist who had evaluated A.A.B. and A.R.B. two years earlier. Dr. Freedman testified that he had diagnosed both A.A.B. and A.R.B. with an adjustment disorder, which he defined as "emotional difficulties that people have in response to situational problems." Report of Proceedings (RP) (Feb. 10, 2015) at 103. He opined that the twins' behavioral problems "could have related to having been raised in a chaotic environment and possibly to poor connection with primary care providers." RP (Feb. 10, 2015) at 106. But he also admitted that the twins' placement in foster care and separation from their other siblings could also have contributed to "certain components of their behavior problems." RP (Feb. 10, 2015) at 111-15.

On cross-examination, Yrizarris' attorney asked Dr. Freedman whether he was familiar with research done by Delilah Bruskas. Dr. Freeman responded that he was not. Yrizarris' attorney moved on to another line of questioning.

The following morning, Yrizarris orally moved to add Bruskas as a witness. Yrizarris described Bruskas as a registered nurse who had done research in the area of emotional consequences for children removed from their parents and placed in foster care. Yrizarris believed that Bruskas would testify that foster care was "a destabilizing influence and likely to cause harm to a child who has a particular need for a stable

4

environment." RP (Feb. 11, 2015) at 200. However, Yrizarris admitted that Bruskas had neither met any of the children nor reviewed any of their records.

The State objected, contending that "whatever she might try to testify about would at best be generic and that's because she will not have time to evaluate the children using any standard scientifically approved empirical method." RP (Feb. 11, 2015) at 203. The trial court denied Yrizarris' request, stating that "given the lateness of the presentation coupled with the fact that Dr. Freedman's testimony included the observation that instability in foster care could have resulted in some of the symptoms that were observed in the children prior to the filing of this petition, I don't see that Ms. Bruskas' testimony would add critical information." RP (Feb. 11, 2015) at 204.

Prior to excluding witness testimony as a sanction for a discovery violation, trial courts must explicitly consider the three Burnet factors: (1) whether a lesser sanction would suffice, (2) whether the violation at issue was willful or deliberate, and (3) whether the violation substantially prejudiced the opponent's ability to prepare for trial. Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 688, 132 P.3d 115 (2006). The erroneous exclusion of a party's witnesses is reversible error unless the error was harmless. In re Dependency of M.P., 185 Wn. App. 108, 118, 340 P.3d 908 (2014) (citing Jones v. City of Seattle, 179 Wn.2d 322, 356, 314 P.3d 380 (2013)). The error is harmless if the excluded testimony is irrelevant, cumulative, or otherwise inadmissible. In re M.P., 185 Wn. App. at 118.

The State contends Burnet is not applicable in this case because "the issue came before the trial court as a motion to add a new witness [and] . . . did not arise from a CR 37(b) motion to impose sanctions for the mother's failure to comply with discovery." Br. of Resp't at 32. We need not address this claim because, even assuming there was a Burnet violation in this case, it was harmless. At the time of trial, Bruskas had not evaluated or even met A.A.B., A.R.B. and E.B. At best, she could have testified in general terms about the effect a foster care placement could have on children. But this testimony would have been cumulative because, as the trial court indicated, Dr. Freedman readily admitted that the twins' placement in foster care could be responsible for some of their behavioral challenges.

Yrizarris also contends, for the first time on appeal, that Bruskas' testimony would have established that termination was not in the children's best interests. But Bruskas' testimony to that effect would have been cumulative at best. The trial court explicitly found, based on the evidence, that it was in the best interests of all three of the children to maintain a relationship with Yrizarris.

> I'm going to make a finding of fact that in my view the best interest
> of all three of these children include having an ongoing and regular
> relationship with their mother as well as their siblings.
>     . . . .
> If their mother is simply out of their lives I believe damage will be
> done to the children as well as to their mother. So I'm going to
> make the finding of fact, as I say, that it is the best interest of the
> children to maintain a relationship with their mother and to maintain
> relationships and contacts with both their mother and their siblings.

RP (Feb. 11, 2015) at 1119-20. Because Bruskas' proposed testimony was cumulative, and thus inadmissible, the exclusion of the evidence, if error, was harmless.

Findings of Fact and Conclusions of Law

Parental rights are a fundamental liberty interest protected by the United States Constitution. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). RCW 13.34.180 and RCW 13.34.190 provide a two-step process that must be followed before a court may terminate parental rights. First, the court must determine whether the following six factors have been proven by clear, cogent, and convincing evidence:

(a) That the child has been found to be a dependent child;

(b) That the court has entered a dispositional order pursuant to RCW 13.34.130;

(c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;

(d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. A parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future . . .
    . . . .

7

(f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

RCW 13.34.180(1). Only if the court finds all six of these factors does the court then determine whether termination of the parent-child relationship "is in the best interests of the child." RCW 13.34.190(1)(b). This factor must be proven by a preponderance of the evidence. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010).

Where the trial court has weighed the evidence, appellate review is limited to determining whether the court's findings of fact are supported by substantial evidence and whether those findings support the court's conclusions of law. In re Dependency of P.A.D., 58 Wn. App. 18, 25, 792 P.2d 159 (1990). In determining whether substantial evidence supports the trial court's findings, this court does not weigh the evidence or the credibility of witnesses. In re Dependency of E.L.F., 117 Wn. App. 241, 245, 70 P.3d 163 (2003).

Yrizarris first contends that the trial court erred in terminating her parental rights because the State failed to prove that all necessary and reasonably available services were offered or provided as required by RCW 13.34.180(1)(d). A service is necessary within the meaning of the statute if it is needed to address a condition that precludes reunification of the parent and child. In re Welfare of C.S., 168 Wn.2d 51, 56 n.3, 225 P.3d 953 (2010). The services offered must be individually tailored to a parent's specific needs. In re Dependency of D.A., 124 Wn. App. 644, 651, 102 P.3d 847 (2004). However, even if DSHS fails to offer or provide necessary services, this element may

still be met if there is evidence in the record from which the trial court could have concluded that such services would not have remedied parental deficiencies "in the 'foreseeable future.'" In re Welfare of Hall, 99 Wn.2d 842, 851, 664 P.2d 1245 (1983). DSHS is not required to offer or provide services that would be futile. In re Dependency of T.R., 108 Wn. App. 149, 163, 29 P.3d 1275 (2001).

Yrizarris first contends that DSHS failed to offer her a psychiatric evaluation to determine whether she needed medication for attention deficit hyperactivity disorder (ADHD), anxiety or depression.

Prior to the filing of the dependency petition, DSHS offered to refer Yrizarris for mental health counseling. Yrizarris declined, stating she preferred to address her mental health needs with her primary care doctor. After filing the dependency petition, DSHS referred Yrizarris to a family preservation services provider with a background in mental health, who assisted Yrizarris in finding a mental health care provider at SeaMar Community Health. However, Yrizarris was consistently late for appointments and ceased attending counseling entirely in February 2012, stating "she didn't feel that she needed counseling . . . her mental health needs were not that serious." RP (Feb. 17, 2015) at 463.

On September 13, 2012, DSHS referred Yrizarris to psychologist Dr. Ellen Walker to conduct a psychological evaluation. Dr. Walker first interviewed Yrizarris and conducted psychological testing on September 25, 2012. Yrizarris told Dr. Walker that

she had been prescribed anti-depression and anti-anxiety medications in the past "but she prefers not to take these." Exhibit (Ex.) 21.

Based on her interview, testing, and review of DSHS records, Dr. Walker diagnosed Yrizarris with polysubstance abuse, due to her history of drinking alcohol and using methamphetamine. Dr. Walker also diagnosed Yrizarris with an adjustment disorder with mixed anxiety and depression, "primarily based on her self-report that she doesn't really feel anxious or depressed other than in relation to all of this terrible stuff that's happening and the stress with dealing with CPS and her kids being out of her life." RP (Feb. 11, 2015) at 264. Dr. Walker recommended that Yrizarris participate in random urinalysis testing to monitor her sobriety and continue participating in mental health counseling.

In line with Dr. Walker's recommendations, DSHS again referred Yrizarris to mental health counseling. Yrizarris began counseling with Dr. Jayme Fergoda on October 1, 2012. Dr. Fergoda diagnosed Yrizarris with generalized anxiety disorder and an adjustment disorder with symptoms of depression, and provided Yrizarris with cognitive behavioral therapy. However, Dr. Fergoda stopped seeing Yrizarris in November 2013 because Yrizarris stopped scheduling appointments and Dr. Fergoda could no longer reach her.

Because Yrizarris had not made significant progress in the previous year despite referrals to a variety of services, DSHS requested that Dr. Walker update her evaluation. On July 17, 2013, Dr. Walker administered cognitive testing which showed

that Yrizarris had strong reasoning skills, an excellent short-term memory, and average information processing speed. Dr. Walker determined that Yrizarris' parenting deficiencies were due to an "external locus of control"—meaning that Yrizarris tended to blame external events for her behavior instead of taking responsibility for it—rather than any cognitive deficits. RP (Feb. 11, 2015) at 276. Dr. Walker also testified that the results of the cognitive testing demonstrated that Yrizarris did not suffer from ADHD.

Yrizarris' social workers continued to be concerned that Yrizarris was not making even basic progress in parenting and household management skills or applying what she had learned. Consequently, on November 7, 2014, DSHS referred Yrizarris to Dr. Walker a third time to determine if there were any additional barriers to progress. Dr. Walker attempted to meet with Yrizarris on two separate occasions but Yrizarris failed to appear for both appointments.

Here, substantial evidence supports the finding that DSHS offered all necessary and appropriate services to address Yrizarris' mental health concerns. Yrizarris argues that DSHS should have evaluated her need for ADHD medication because she had a prior diagnosis of ADHD and a parenting coach had recommended it. However, Dr. Walker determined Yrizarris did not suffer from ADHD, so a referral for an ADHD medication evaluation was unwarranted. And Yrizarris told Dr. Walker she did not want to take medication to manage her depression and anxiety, so an evaluation for psychiatric medication would have been futile.

For the first time on appeal, Yrizarris criticizes Dr. Walker's evaluation, contending that Dr. Walker did not follow "basic professional protocols for diagnosing adult ADHD." Br. of Appellant at 39. In making this claim, Yrizarris relies on a variety of academic journal articles and internet websites, none of which were before the trial court or are in the record on appeal. They are not properly before us and we do not consider them. See State v. Vasquez, 95 Wn. App. 12, 16, 972 P.2d 109 (1998).

Yrizarris contends the trial court erred in finding that there was little likelihood her parental deficiencies would be remedied in the near future and that continuation of the parent-child relationship diminished the children's prospects for early integration into a stable and permanent home, as required by RCW 13.34.180(1)(e) and (f), respectively. But Yrizarris' challenge to these findings is premised solely on her claim that they were "premature" because the State had not offered or provided all necessary services. Because, as discussed above, the trial court's finding to the contrary was supported by the evidence, the trial court did not err. Moreover, Yrizarris does not challenge the trial court's finding that a rebuttable presumption arose that RCW 13.34.180(1)(e) was established because Yrizarris failed to improve her deficiencies within a year of the dispositional order.

Finally, Yrizarris contends the trial court erred in finding that termination of her parental rights was in the children's best interest. We afford a trial court broad discretion in making the "best interests" determination and give its decision great

12

deference on review. In re Welfare of Young, 24 Wn. App. 392, 395, 600 P.2d 1312 (1979).

Again, Yrizarris' challenge depends on the premise, rejected above, that DSHS failed to establish the criteria in RCW 13.34.180(1) by clear, cogent, and convincing evidence. Because DSHS met that burden, her challenge fails. In any event, substantial evidence supports the finding. Yrizarris contends that her parental rights should not have been terminated because she and the children "have a loving connection and affection for one another and are bonded." Br. of Appellant at 48. The trial court found all of this to be true and still determined that the children's need for legal permanency was the paramount consideration. In light of what was clearly careful consideration of Yrizarris' love for her children, we find the trial court did not err.

## CONCLUSION

We affirm the order terminating Yrizarris' parental rights.

WE CONCUR: