IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Parenting and Support of<br><br>D.M.K.-K.,<br><br>A minor child. | No. 86060-7-I<br>(consolidated with Nos. 86061-5-I, 86062-3-I, 86088-7-I)<br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION |

Respondent Daniel Kirkland filed a motion for reconsideration of the opinion filed on October 27, 2025 in the above case. Appellant Alison Knudson filed a response to the motion. The panel has determined that the motion for reconsideration should be denied. The panel has also determined that the opinion filed on October 27, 2025 should be withdrawn to remove the last sentence of the first paragraph on page 12 and a substitute opinion filed. Now, therefore, it is hereby

ORDERED that respondent's motion for reconsideration is denied. It is hereby further

ORDERED that the opinion filed on October 27, 2025 shall be withdrawn and a substitute opinion shall be filed.

_____, ACJ

Díaz, J.
_____

Chung, J.
_____

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| In the Matter of the Parenting and Support of<br><br>D.M.K.-K.,<br><br><div align="center">A minor child.</div> | No. 86060-7-I<br>(consolidated with Nos. 86061-5-I, 86062-3-I, 86088-7-I)<br><br>UNPUBLISHED OPINION |

BOWMAN, A.C.J. — Alison Knudson appeals the trial court's order excluding evidence as a sanction for discovery violations. Because the trial court made no *Burnet*[1] findings in support of the harsh sanction and we cannot determine from the record whether the excluded evidence was cumulative, irrelevant, or otherwise inadmissible, we reverse the order issuing sanctions, vacate the final parenting plan, and remand for a new trial.

## FACTS

Daniel Kirkland and Alison[2] began dating in 2017. At the time, Alison had one minor son, G.K., from a prior relationship, and Daniel had three daughters from a prior marriage.[3] In 2018, Alison and G.K. moved into Daniel's home. And in June 2019, Alison and Daniel had a daughter, D.M.K.-K. In 2020, they bought

___

[1] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997).

[2] For clarity, we refer to Daniel Kirkland and Alison Knudson by their first names. We mean no disrespect.

[3] By the time of the 2022 trial, all three of Daniel's daughters were adults and living on their own.

a home together.  Two years later on January 10, 2022, Daniel moved out of their home and broke off the relationship.

After the couple separated, Daniel proposed a 50/50 residential schedule for two-year-old D.M.K.-K.  Alison did not agree to the plan.  Instead, on January 13, 2022, she sought a domestic violence (DV) protection order (DVPO), protecting her, G.K., and D.M.K.-K. from Daniel.  Alison alleged that Daniel abused drugs and alcohol and was physically and verbally abusive to her and the children.  The court granted Alison a temporary ex parte DVPO the same day.

On January 28, 2022, the court held a hearing on Alison's petition and referred the parties to family court services (FCS) for a DV assessment.  FCS evaluator and social worker Nicole Bynum investigated Alison's allegations and determined that no information supported her request for a DVPO.  On June 7, 2022, the court dismissed Alison's petition.

Meanwhile, on January 27, 2022, Daniel petitioned for a parenting plan and residential schedule.[4]  In June, a family law court commissioner issued a temporary parenting plan.  The court designated Alison as the primary custodial parent with D.M.K.-K. residing with Daniel 5 out of every 14 overnights and ordered joint decision making.  In July, the court appointed clinical psychologist and parenting evaluator Dr. Monique Brown to investigate issues related to DV, mental health, and the safety of D.M.K.-K.  The court ordered Dr. Brown to issue her report by October 28, 2022.

---

[4] Alison and Daniel also petitioned for distribution of their property.  They resolved that issue at a separate trial, and property is not a subject of this appeal.

In June 2022, Alison stopped taking D.M.K.-K. to the parties' childcare provider, Millennium Childcare. On August 23, Daniel asked the court to order Alison to continue taking D.M.K.-K. to Millennium. On September 6, the commissioner granted his request. That same day, Alison took D.M.K.-K. to the emergency department at Mary Bridge Children's Hospital for a "severe diaper rash." After examining D.M.K.-K. and speaking to Alison, the doctor "suspected sexual abuse" and reported it to Child Protective Services (CPS) and the police.

On September 9, 2022, Daniel moved for a restraining order, limiting Alison's contact with D.M.K.-K. Daniel said he had "grave concerns for the immediate safety and wellbeing of [his] daughter" because after the doctor's suspicion of sexual abuse, Alison refused to provide him any more information. Daniel maintained that no one abused D.M.K.-K. while she was in his care, "which would mean that any sexual abuse would have had to take place while [D.M.K.-K.] was in Alison's care" or that Alison was fabricating the allegation. He also alleged that Alison repeatedly made false allegations about him to the court and CPS. The same day, the court issued a temporary restraining order, limiting Alison's contact with D.M.K.-K. The court set a hearing on Daniel's petition for October 3, 2022.

At the October 3 hearing, Alison denied that she suggested to medical personnel that Daniel abused D.M.K.-K. But the court found that the medical records "appear to document that the mother expressed concern to the medical professionals that any alleged sexual abuse happened *while the child was in the*

*care of the father.*"  Still, the court lifted the temporary restraining order, concluding that the trial court could best resolve the matter.

On October 13, 2022, CPS completed its investigation into the allegations of sexual abuse of D.M.K.-K. and concluded that there were "no physical findings to support sexual abuse occurred."  And as October 28 approached, Dr. Brown indicated she could not timely complete her parenting evaluation report because she had not yet interviewed Alison or received any information from her.  So, the parties jointly moved to continue trial to April 24, 2023, which the court granted.  Then, in December 2022, the police closed their investigation of the sexual abuse allegation as "inactive" because D.M.K.-K. did not disclose any sexual abuse during a child forensic interview and Alison was "unwilling[ ]" to provide an interview.

In January 2023, Dr. Brown interviewed Alison.  But she noted that again, she might be unable to complete her evaluation in time for the new trial date because Alison still had provided no documents.  Dr. Brown explained that Alison's counsel gave her some documents but they were mainly duplicative of information Daniel had already provided.

On February 3, 2023, Dr. Brown e-mailed the parties to make a "last call for documentation."  Then, on February 24, Daniel moved to continue the trial until May so Dr. Brown could complete her evaluation.  And he asked the court to allow Dr. Brown to finish her report even if Alison did not timely comply with Dr. Brown's last call for documents.  In response, Alison asked the court to continue the trial until June or July based on her counsel's availability.  The court

continued the trial to June 20, 2023 and ruled that Dr. Brown could proceed with the evaluation even if Alison did not provide more information.

On April 7, 2023, both parties served each other with their interrogatories and requests for production of documents. Responses to the discovery requests were due on May 8.[5] Daniel also scheduled Alison's deposition for May 18.

On May 15, 2023, Dr. Brown told the parties she planned to issue her report on May 17. At the time, Dr. Brown had given Alison "multiple opportunities" to provide her with information and documentation but Alison remained "particularly guarded" in providing any information. The next day on May 16, Alison e-mailed Dr. Brown that she had recently received " 'new relevant information' " that she wanted Dr. Brown to consider before issuing her report. But Alison did not give the new information to Dr. Brown.

Dr. Brown issued her report as scheduled on May 17, 2023. She told the court that even without Alison's documentation, she based her conclusions "on convergent data collected from a significant amount of provided information," including the parents' interviews, court records, police and CPS records, medical records, and several witness declarations. Dr. Brown concluded that the "[d]ata did not support a pattern of [DV] committed by [Daniel]" and that it was "more probable than not" that he "did not engage in a pattern of domestic abuse against Alison." She also concluded that "particularly in 2022," it appeared Alison "used the medical system to support a narrative that [Daniel] is a neglectful and abusive parent" and that her behavior appeared "willful and deliberate." Dr. Brown also

---

[5] The 30-day deadline to respond fell on Sunday, May 7, 2023, which by rule extended to May 8, 2023. *See* CR 33(a); CR 34(b)(3)(A); CR 6(a).

concluded that Alison appeared to be "engaging in behaviors that are consistent with abusive use of conflict" and that she is "resistant to or unable to coparent in a peaceful capacity." Finally, Dr. Brown stated that Alison's psychological test scores "were consistent with individuals who may have a personality disorder."

Dr. Brown discussed several possible parenting schedules but said she "would not recommend anything more than a 60/40 schedule [in favor of Daniel] at this time due to the level of conflict that appears . . . to be instigated by Alison." And she recommended that the court award Daniel sole decision making authority for medical, education, and extracurricular activities. Dr. Brown also attached Alison's May 16 e-mail to her report, noting that it was the first time Alison mentioned any documentation and that Alison did not provide her with the new information. Still, Dr. Brown told the court that she would add an addendum to her report if it determined that she should review Alison's new information.

Meanwhile, the May 8, 2023 discovery deadline passed without either party responding to each other's requests.[6] Alison also did not appear for her May 18 deposition. On June 30, the parties held a CR 26(i) conference and agreed to reschedule Alison's deposition for July 10. On July 7, Alison moved to continue the trial until October, and the court set trial for October 10, 2023. Alison did not appear for her July 10 deposition.

On July 13, 2023, Daniel moved to compel Alison to respond to his discovery requests and appear for her deposition. On July 26, the trial court

---

[6] Daniel had answered Alison's interrogatories and compiled documents responsive to her requests for production but refused to provide the information until Alison responded to his requests.

ordered both parties to produce their "complete responses" to discovery by 4:00 p.m. on July 31. And it ordered Alison to appear for an August 21 deposition under the threat of sanctions.[7] Then, on July 30, Alison's attorney withdrew from her case. The next day on July 31, Alison responded to Daniel's interrogatories, but she objected to most of his questions as premature, unrelated, or privileged. And she refused to produce any documents.

On August 7, 2023, Daniel moved for CR 37(b) sanctions against Alison for failure to comply with the court's discovery order. He asked that she be "sanctioned and prohibited from offering documents or testimony at trial which would have been responsive to [his] discovery requests."[8] On September 5, the trial court granted Daniel's CR 37(b) motion. The court acknowledged that "[e]xclusion of evidence is [a] harsh remedy per *Burnet*," and it concluded that it was "persuaded [Daniel] has shown prejudice [and] willfulness" and that "no lesser sanction is adequate." But the court did not conduct a *Burnet* analysis on the record.[9] The court prohibited Alison from "offering documents at trial which would have been responsive to [Daniel]'s discovery requests (but which were not answered)."

The trial on the parenting and support of four-year-old D.M.K.-K. began on October 10, 2023. Alison appeared pro se and moved to continue trial so she could get a lawyer. The court denied her request, explaining that the case had been pending for "20 months, which does exceed our local court rules for

---

[7] Alison appeared for her August deposition.

[8] *See* CR 37(b)(2)(B).

[9] *See Burnet*, 131 Wn.2d at 494.

timeliness in terms of what we expect to have happen and how we expect cases to resolve that involve children." It concluded that any further delay would not be in D.M.K.-K.'s best interest and the trial proceeded. The main issues at trial were establishing a residential schedule and awarding decision making authority. Both parents sought to be the primary custodial parent and asked for parenting restrictions under RCW 26.09.191.

Daniel testified at trial and called several witnesses. He alleged Alison had untreated mental health issues and engaged in abusive use of conflict. Dr. Brown testified about her parenting evaluation, residential schedule recommendation, and her recommendation that Daniel retain sole decision making authority. And FCS evaluator Nicole Bynum testified about her investigation into Alison's claims of DV and finding that no evidence supported her allegations.

Alison also testified. She alleged Daniel engaged in acts of DV, had issues with substance abuse, and engaged in abusive use of conflict. She continued to allege that Daniel was abusive to her and G.K., denied that she suggested to medical personnel and others that Daniel sexually assaulted D.M.K.-K., and testified generally about her ability to parent. Alison did not move to admit any documents at trial. But during her testimony, she told the court she had exhibits she wanted to share. The court told her that other than illustrative exhibits, per its September CR 37(b) sanction order, she "would not be allowed to show any documents at trial that had not been disclosed in discovery."

After trial, the court issued a final order, findings of fact, and conclusions of law. It found that Daniel did not engage in DV or abusive use of conflict and that Alison showed a "pattern" of "emotionally manipulative behaviors" harmful to D.M.K.-K. Specifically, Alison appeared to delay the completion of the parenting evaluation, discovery, her deposition, and mediation. And she gave inconsistent information about D.M.K.-K. to medical care providers, social workers, and law enforcement. Finally, the court found that Alison appeared to "exaggerate events" and that she had "difficulty resolving conflict without court intervention and then had difficulty following court orders." The court ordered Alison to obtain a mental health evaluation. And it ordered that D.M.K.-K. live with Daniel except every Wednesday and every other weekend. The court also awarded Daniel sole decision making authority.

Alison appeals.

## ANALYSIS

Alison argues that the trial court abused its discretion by ordering a harsh sanction under CR 37(b)(2)(B) without first conducting an adequate *Burnet* analysis and that the error was not harmless, requiring reversal of the final orders and remand for a new trial.[10] We agree.

---

[10] Daniel argues that we should refuse to hear Alison's appeal because she did not assign error to the September 5, 2023 order granting his CR 37(b) motion in her notice of appeal. But on October 2, 2024, Alison moved to amend her notice of appeal, assigning error to the sanction order. And on December 23, 2024, a commissioner of this court granted the motion. So, we review Alison's challenge to the trial court's order.

1. Exclusion of Evidence

The trial court has broad discretion to impose sanctions for a violation of discovery orders. *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 494, 933 P.2d 1036 (1997). So, we review an order imposing sanctions for abuse of that discretion. *Id.* A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. Thurlby*, 184 Wn.2d 618, 624, 359 P.3d 793 (2015).

When a trial court imposes a "severe [discovery] sanction" under CR 37(b), it must explicitly consider the factors enumerated in *Burnet*. *See Jones v. City of Seattle*, 179 Wn.2d 322, 338, 314 P.3d 380 (2013). A court imposes one of the "harsher" remedies under CR 37(b) when it issues one of the sanctions as described in CR 37(b)(2). *In re Dependency of M.P.*, 185 Wn. App. 108, 115-16, 340 P.3d 908 (2014) (citing *Mayer v. Sto. Indus., Inc.*, 156 Wn.2d 677, 688, 132 P.3d 115 (2006)). Those sanctions include "prohibiting the disobedient party from introducing designated matters in evidence." CR 37(b)(2)(B).

Under *Burnet*, before issuing harsher sanctions under CR 37(b)(2), the trial court must first consider on the record whether the discovery violation was willful or deliberate, whether the violation substantially prejudiced the opponent's ability to prepare for trial, and whether a lesser sanction would suffice to cure that prejudice. 131 Wn.2d at 494. The court may conduct the analysis orally or in writing. *Teter v. Deck*, 174 Wn.2d 207, 217, 274 P.3d 336 (2012). But failure to clearly consider the *Burnet* factors before imposing a harsher sanction amounts to an abuse of discretion. *Blair v. TA-Seattle E. No. 176*, 171 Wn.2d 342, 348-

49, 254 P.3d 797 (2011).  And when the record does not reflect a *Burnet* analysis, we may not substitute our own analysis to cure the trial court's error. *Id.* at 351.

Here, the parties do not dispute that the trial court's order excluding from trial any documents responsive to Daniel's discovery requests amounts to one of the harsher sanctions under CR 37(b)(2).  But the record does not show that the trial court explicitly considered the *Burnet* factors before issuing the sanction. The court acknowledged only that "[e]xclusion of evidence is [a] harsh remedy per *Burnet*," that it was "persuaded [Daniel] has shown prejudice [and] willfulness," and that "no lesser sanction is adequate."  But it did not explain why Alison's failure to timely respond to discovery was willful or how the discovery violation prejudiced Daniel's ability to prepare for trial.  And it did not consider on the record potential lesser sanctions or explain why a lesser sanction would not alleviate any prejudice.

The trial court erred by not considering the *Burnet* factors on the record before prohibiting Alison from introducing certain documents at trial.

2. Harmless Error

Still, the trial court's failure to comply with *Burnet* is subject to a harmless error analysis.  *See Jones*, 179 Wn.2d at 355-56 (failure to make proper *Burnet* findings is subject to a harmless error analysis).  "Under the harmless error test in civil cases, an error is harmless when it does not materially affect the outcome of the trial."  *Lavington v. Hillier*, 22 Wn. App. 2d 134, 148, 510 P.3d 373 (2022). Excluded evidence does not materially affect the outcome of the trial when it is

irrelevant, unfairly prejudicial, or cumulative. *Jones*, 179 Wn.2d at 356, 360. To be cumulative, the evidence need not be identical to the admitted evidence, but the substance of the evidence must be the same. *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 731, 315 P.3d 1143 (2013).

Daniel argues that any error is harmless because the evidence excluded under the trial court's sanction order was cumulative of the documents he admitted as trial exhibits, Alison testified about the contents of several documents, and the court likely would have excluded some documents as hearsay.[11] But the admissibility of the documents Alison sought to admit was not litigated below. And the record provides only general descriptions of a few documents. So, we are unable to determine whether the documents Alison sought to admit would have been cumulative, whether Alison testified about the complete content of those she mentioned during testimony, or whether the court would exclude any portion of her documents as hearsay.

*M.P.* is instructive. In that case, the State moved to exclude two expert witnesses because they were not timely disclosed. 185 Wn. App. at 113-14. The trial court granted the motion but made no *Burnet* findings. *Id.* On appeal, we concluded the error was not harmless. *Id.* at 118. The parties did not litigate the admissibility of the excluded testimony below, so the record on appeal did not clearly specify "the nature of the testimony expected to be elicited from the

---

[11] Daniel also argues that much of the evidence the court prohibited Alison from introducing at trial was not excluded by the sanction order because Alison was prohibited from offering only documents that Daniel had not " 'already seen.' " But the sanction order specifically prohibits Alison from "offering documents at trial which would have been responsive to [Daniel]'s discovery requests (but which were not answered)."

excluded witnesses." *Id*. As a result, we could not determine whether the excluded testimony would have been cumulative, irrelevant, or otherwise inadmissible. *Id*.

Because the parties here did not litigate below the admissibility of any documents Alison may have sought to admit at trial, this record contains only a general description of the contents of some of those documents. So, we cannot determine whether the documents would have been cumulative, irrelevant, or otherwise admissible, and we cannot conclude that the trial court's error was harmless. As a result, we reverse the order issuing sanctions, vacate the final parenting plan,[12] and remand for a new trial.[13]

3. Attorney Fees

Both Daniel and Alison request attorney fees on appeal. Daniel requests fees under RAP 18.1 and CR 37(d), and Alison requests fees under RAP 14.2 and RCW 26.09.140. RCW 26.09.140 gives this court discretion to award attorney fees. Because we reverse and remand for a new trial, we decline to award either party attorney fees and costs and reserve the issue for the trial court to decide. *See* RAP 18.1(i).

---

[12] The trial court also issued a final child support order. Because a new parenting plan may affect the calculation of child support, we authorize the trial court to modify the child support obligation accordingly.

[13] Alison requests a new judge on remand. The remedy of reassignment has limited availability; " 'even where a trial judge has expressed a strong opinion as to the matter appealed, reassignment is generally not available as an appellate remedy if the appellate court's decision effectively limits the trial court's discretion on remand.' " *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 487 n.4, 421 P.3d 1046 (2018) (quoting *State v. McEnroe*, 181 Wn.2d 375, 387, 333 P.3d 402 (2014)). After reviewing the record in this case, we conclude that the trial court's impartiality cannot " 'reasonably be questioned' " and decline to order reassignment on remand. *Id.* (quoting *State v. Solis-Diaz*, 187 Wn.2d 535, 540, 387 P.3d 703 (2017)).

In sum, we reverse the order issuing sanctions, vacate the final parenting plan, remand for a new trial, and reserve issuing appellate fees and costs for the trial court.

_____, ACJ

WE CONCUR:

_____
Díaz, J.

_____
Chung, J.