# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| IN RE DEPENDENCY OF J.N., DOB, 7/28/13, | ) ) ) | No. 74460-7-I |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | |
| Respondent, | ) ) | |
| v. | ) ) | DIVISION ONE |
| BRYAN CORBETT, JR. AKA BRYAN NICHOLS, | ) ) ) | UNPUBLISHED OPINION |
| Appellant. | ) ) | FILED: September 26, 2016 |

2016 SEP 26 AM 11: 09

SPEARMAN, J. — Bryan Corbett appeals an order terminating his parental rights to his son, J.N. He argues that the record does not support the court's finding that the Department of Social and Health Services (DSHS) offered or provided all necessary services, reasonably available, capable of correcting his parental deficiencies within the foreseeable future. He also argues that the juvenile court failed to consider the statutory factors pertaining to incarcerated parents provided by RCW 13.34.180(1)(f). We find no error and affirm.

## FACTS

Bryan Corbett, aka Bryan Nichols and Charnell Harris are the parents of J. N., born on July 28, 2013. Corbett was charged in King County Superior Court with allegations of domestic violence against Harris and J.N., based on incidents

that occurred on February 2 and 25, 2014. On February 2, while Harris was holding J.N. in her arms, Corbett allegedly "threw a 'butcher block' that was the size of a brick that struck the child in the head." Clerk's Papers (CP) at 325. J.N. suffered a closed head injury and was admitted to the hospital. On February 25, 2014, Corbett was arrested when U.S. Marshals found him hiding under a bed in Harris's home, in violation of a no contact order.

Corbett was subsequently convicted by a jury of burglary in the first degree–domestic violence and two counts of domestic violence felony violation of a court order.[1] He was also convicted of misdemeanor assault–domestic violence against J.N. On August 22, 2014, Corbett was sentenced to 152 months (12.66 years) in prison for the burglary conviction and to two concurrent 60-month terms for the violations of a court order. The sentencing court also imposed a lifetime no contact order against Corbett as to Harris and J.N.[2]

DSHS filed a dependency petition as to J.N. on February 28, 2014.[3] On August 18, 2014, two weeks before Corbett was sentenced, the juvenile court found J.N. dependent as to Corbett. The dispositional order required Corbett to

---

[1] Corbett has an extensive criminal history that includes convictions for assault, burglary, possession of controlled substances, violation of protection orders, and other offenses committed during 1999-2012.

[2] On appeal, we struck Corbett's lifetime no contact order and remanded for reconsideration and resentencing because the trial court failed to enter findings regarding the order's reasonable necessity and duration as required by In re Rainey, 168 Wn.2d 367, 377, 229 P.3d 686 (2010). See State v. Corbett, 192 Wn. App. 1050, 2016 WL 785073 (2016). Corbett filed a petition for review challenging the guilty verdict which is pending before the Washington Supreme Court (Supreme Court No. 93023-6).

[3] On March 5, 2014, the juvenile court entered an order prohibiting Corbett from having contact with J.N. or Harris to remain in effect until the dependency is dismissed. Ex. 1. Dependency was established as to Harris on May 2, 2014. On September 28, 2015, Harris's parental rights were terminated by default.

2

comply with random urinalysis testing twice a week for 90 days, complete a drug/alcohol evaluation and treatment program, participate in a domestic violence treatment program by a state certified provider, as well as a psychological evaluation with a parenting component, and to establish paternity.

After sentencing, Corbett was sent to Coyote Ridge Corrections Center in January 2015 and then to Stafford Creek Corrections Center in October. J.N.'s social worker, Amanda Potter, testified that she "had made reasonable efforts to ascertain whether" the court ordered services were available there. CP at 90. She also testified that the State had been "unable to obtain the services of a DSHS contracted and qualified psychological evaluator who will travel to Coyote Ridge" to assess Corbett. CP at 91. Noemi Peredo, another social worker who later assumed J.N.'s case, testified that the file contained letters and emails showing that Potter had made at least five attempts to contact the Department of Corrections (DOC) regarding services for Corbett. Potter also determined that Corbett could not participate in the parenting assessment component of the court ordered psychological evaluation because of the lifetime no contact order.

While Corbett was at Coyote Ridge, his DOC counselor, Brady Hinds, spoke with Potter and confirmed that the facility could not provide a drug and alcohol evaluation, random urinalysis testing, or domestic violence batterer's treatment. Hinds testified that Corbett was placed in his Thinking for a Change program that addressed anger issues and "teaches...to basically stop and think before they act." VRP (12/01/15) at 128. Corbett completed the nine month program, along with another four week voluntary course called Inside Out Dad.

Corbett also asked Hinds multiple times about getting a psychological exam, but Hinds told him it would have to be at his own expense. Hinds also told Corbett that he could not get substance abuse treatment until he was two years from his release date.

In October 2015, Corbett was transferred to Stafford Creek correctional facility. Prior to the transfer, on March 12, 2015, the State obtained an order striking all service requirements for the father, because no such services were available while he was incarcerated. In May 2015, Peredo was assigned as J.N.'s social worker. Although Corbett was advised of this change at the time, Peredo testified that Corbett made no attempts to contact him to ask about J.N.

Corbett's DOC counselor at Stafford Creek was James Forbis. Forbis confirmed that none of the previously ordered services would be available until a time closer to Corbett's release date. According to Forbis, Corbett was on track for intensive outpatient care for substance abuse addiction, but it would not be available to him until approximately 2022. Stafford Creek also has no programs for counseling or treatment for domestic violence. Forbis testified that he had never seen a psychologist come in to evaluate an offender. Nor was he aware of a process for transporting children to the facility so an inmate's parenting abilities could be evaluated. But he noted that children were permitted into the facility to visit a parent. He also explained that it was possible to get permission to have a psychologist or domestic violence evaluator come into the facility if the person were prescreened and approved.

Forbis also mentioned a DOC program called Redemption, a 21 week course run by inmates, as a potential program for Corbett. The program included "a whole lot of stuff for anything, all the way up to filling out a checkbook when you're released." CP at 26. Stafford Creek offered the Redemption program, along with Alcoholics Anonymous, Narcotics Anonymous, and a Partners in Parenting class.

At the pretrial conference on October 9, 2015, Corbett sought a continuance based on not having received a witness and exhibit list. The juvenile court granted a short continuance, rescheduling the trial for November 16, 2015, in order for DSHS to present a settlement offer. Corbett moved to reinstate services on October 29, 2015. Corbett requested another continuance on October 30, 2015.

In its November 6, 2015 order denying Corbett's request for a continuance, the juvenile court found that Corbett "did not contest the motion relieving the Dept of offering him services; and (2) he has not met the required standard of extraordinary circumstances." CP at 258. After a hearing on December 1 and 2, 2015, the court terminated Corbett's parental rights. Corbett appeals.

## DISCUSSION

Corbett seeks reversal of the termination order, claiming that evidence before the court was insufficient to establish that all necessary services were offered or provided as required by RCW 13.34.180(1)(d) and to satisfy the incarcerated parent provisions of RCW 13.34.136 and RCW 13.34.145. We will

uphold the trial court's findings if they are supported by substantial evidence. In re Dependency of K.D.S., 176 Wn.2d 644, 652, 294 P.3d 695 (2013).

Parents have a fundamental right to the custody and care of their children. Id., Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In Washington, before a court can enter an order terminating that right, the State must satisfy the two-part test set out in RCW 13.34.180(1) and RCW 13.34.190. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). The first part focuses on the adequacy of the parent and must be proved by clear, cogent, and convincing evidence. A.B., 168 Wn.2d at 911. "Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be 'highly probable.'" In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (internal quotation marks omitted) (quoting In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)). The second step focuses on the child's best interest and is reached only if the first step is satisfied. A.B., 168 Wn.2d at 911.

The first step involves six statutory factors set forth in RCW 13.34.180(1). The factors are:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;

(e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; [and]

(f) That the continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. . . .

In addition to finding the six statutory elements, due process requires that a court make a finding of current unfitness before parental rights may be terminated. K.R., 128 Wn.2d at 142. A finding that all six factors have been met raises an implied finding of parental unfitness. Id.

Corbett challenges the court's conclusions regarding RCW 13.34.180(1) because, according to him, the underlying factual findings are not supported by substantial evidence. Corbett claims that DSHS failed to show that it offered or provided "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future" as required by subsection (1)(d). A service is necessary within the meaning of the statute if it is needed to address a condition that precludes reunification of the parent and child. In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014) (citing In re Welfare of C.S., 168 Wn.2d 51, 56, n.3, 225 P.3d 953 (2010)). The State must tailor the services offered to the individual's needs. In re Welfare of K.J.B., 188 Wn. App. 263, 278, 354 P.3d 879 (2015) review granted, 184 Wn.2d 1033 (2016).

Here, the juvenile court concluded that:

2.11   Services ordered under RCW 13.34.130 would have been expressly and understandably offered or provided to the father if he had been available to participate in the[m] and all necessary services reasonably available, capable of correcting the parental

7

deficiencies within the foreseeable future have been expressly and understandably offered or provided.

2.12 Even if the court-ordered services had been reasonably available to him in prison and even if Mr. Corbett had fully participated in the services, the services would have been unable to correct his parental deficiencies in the near future.[4]

CP at 311.

Corbett disputes the trial court's factual findings regarding these conclusions.

The juvenile court found that:

2.7 The social worker made efforts to find services that would be available for the father at his correctional facility; however, none were available. Due to the father's long-term incarceration and no services being available for him at Coyote Ridge Corrections Center, all of his court ordered services were stricken on March 12, 2015.

2.8 Previously ordered services for substance abuse addiction are not available where Mr. Corbett is incarcerated until approximately the last year of his incarceration.

2.9 Previously ordered services of treatment/counseling for perpetrators of domestic violence are not available where Mr. Corbett is incarcerated.

2.10 It may be possible for a psychological evaluator to come to where Mr. Corbett is incarcerated and conduct an evaluation of him, but it would not and cannot include a parenting component as Mr. Corbett has two No Contact Orders in place between him and [J.N.]. It is also unknown how ongoing treatment of Mr. Corbett would take place if any were recommended.

CP at 310-11.

---

[4] Although labeled as findings of fact, these are actually conclusions of law. We review a conclusion of law erroneously labeled as a finding of fact as a conclusion of law; we review a trial court's conclusion of law de novo. Willener v. Sweeting, 107 Wn.2d 388, 394, 730 P.2d 45 (1986).

There is ample evidence in the record showing that the required substance abuse and domestic violence treatment programs were either simply not available or that Corbett would only be eligible to participate on a date closer to his release. The record also supports a finding that an outside psychological evaluation would not be sufficient without a parenting component, and because of the existence of at least one no contact order, the parenting component would be impossible to attain.

Even if appropriate services had been available, DSHS argues that providing them to Corbett would have been futile under the circumstances. Where the record establishes that the offer of services would be futile, the trial court can make a finding that DSHS has offered all reasonable services. In re Welfare of M.R.H., 145 Wn. App. 10, 25, 188 P.3d 510 (2008). Even when DSHS "inexcusably fails" to offer or provide necessary services, "termination is appropriate if the service would not have remedied the parent's deficiencies in the foreseeable future. . . ." In re Dependency of T.R., 108 Wn. App. 149, 164, 29 P.3d 1275 (2001); see also In re Welfare of Hall, 99 Wn.2d 842, 850–51, 664 P.2d 1245 (1983). The term "'foreseeable future" must be considered from the child's point of view.'" Hall, 99 Wn.2d at 851.

Here, the provision of services would not have remedied Corbett's parental deficiencies in the near future. Corbett is currently serving a sentence of over twelve years, with an earned release date of January 19, 2023. At the time of the termination order, J.N. was 2 1/2 years old. While the lifetime no contact order has been stricken, the juvenile court's order still prohibits Corbett from

9

contacting J.N. until the dependency has been dismissed. While neither criminal conduct nor imprisonment alone will justify termination of the parent-child relationship, a court must consider a parent's inability to perform his parental obligations, because of imprisonment, the nature of the crime committed, the person against whom the criminal act was perpetrated, and the parent's conduct prior to imprisonment and during the period of incarceration. In re Pawling, 101 Wn.2d 392, 398-99, 679 P.2d 916 (1984).

It is undisputed that J.N. was a victim of Corbett's assault and Corbett does not challenge the juvenile court's finding that he "is a serial perpetrator of domestic violence" and "showed no appreciation for his past violent actions and lacked any insight that he might benefit from treatment." CP at 327. On this record, we cannot say that the juvenile court erred when it found that the provision of services and Corbett's full participation would have still been "unable to correct his parental deficiencies in the near future."[5] CP at 327.

Corbett next argues that the trial court erred by failing to apply a 2013 amendment to the dependency statutes that requires trial courts to make certain considerations before terminating the rights of a parent who "is incarcerated."

---

[5] Corbett also disputes the court's conclusions that continuation of his relationship with J.N. "clearly diminishes ... [J.N.'s] prospects for early integration into a stable and permanent home," that he is "unfit to parent [J.N.]," and that termination of the relationship is in J.N.'s best interests. CP at 328, Findings 2.17, 2.22, and 2.23. He contends that the conclusions were premature due to DSHS's failure to provide him with the necessary services. The claim is without merit. There is ample evidence in the record from which the court could conclude that J.N. could not be returned to Corbett within the near future and that termination was necessary to insure J.N.'s integration into a stable and permanent home, including the unchallenged findings that Corbett has not been part of J.N.'s life since February, 2014, that the juvenile court imposed a no contact order against him for the duration of the dependency, and that he is a "serial perpetrator of domestic violence." CP at 325-327.

LAWS OF 2013, ch. 173, § 3(4)(b). Under RCW 13.34.180(1)(f), when filing a petition to terminate parental rights,

> [i]f the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b); whether the department or supervising agency made reasonable efforts as defined in this chapter; and whether particular barriers existed as described in RCW 13.34.145(5)(b) including, but not limited to, delays or barriers experienced in keeping the agency apprised of his or her location and in accessing visitation or other meaningful contact with the child.

Corbett contends that the State failed to prove that it made reasonable efforts to provide him with all available services during his incarceration and thus failed to satisfy the prerequisite to termination set forth in RCW 13.34.180(1)(f). Corbett cites A.M.M., 182 Wn. App. 776, to support his argument that the State did not prove the factors set forth in RCW 13.34.180(1). According to him, DSHS fell short of making "reasonable efforts," because it should have gone to greater lengths to determine what services were necessary and to provide them. RCW 13.34.180(1)(f).

Recently the Supreme Court decided In Matter of Dependency of D.L.B., 376 P.3d 1099 (2016), in which it found that DSHS had made reasonable efforts to offer services to the parent while incarcerated.[6] In that case the social worker testified

---

[6] The issues in D.L.B. involved RCW 13.34.180(1)(d) (termination) and RCW 13.34.136(2)(b)(i)(A), which requires that a permanency plan "where possible, must include treatment that reflects the resources available at the facility where the parent is confined." The Supreme Court analyzed the record and found that DSHS fulfilled the standards for both statute, having "made reasonable efforts to refer her to the necessary services available in jail." 376 P.3d at 1109.

> that she contacted the jail to inquire about services for Saint–Louis and learned that the only required service available was one-on-one mental health counseling. ... [the social worker's] testimony on this issue was undisputed. Indeed, it was corroborated by Saint–Louis's testimony that the only people she knew in the jail's chemical dependency program were referred there by drug court.

In re D.L.B., 376 P.3d at 1109.

Here, social workers made at least five attempts to reach DOC to inquire about services available at the two different facilities where Corbett was contained. The record shows that the Department made reasonable efforts to provide and offer all necessary services that were reasonably available to Corbett during his incarceration.

Corbett makes a number of collateral arguments against the finding that all necessary services had been offered or provided. He argues that DSHS misunderstood its obligations, citing testimony that suggested that it was Corbett's responsibility to contact DSHS within 72 hours of his release and request services. These statements, however, referred to provisions in the agreed order of dependency, which was entered before Corbett was sentenced.. At that point it was not clear how long Corbett's sentence would be; the order reflected the intent of the court at that time, not the intent of DSHS.

Next, Corbett argues that DSHS further failed to provide all necessary services reasonably available because it only inquired about the services specifically listed in the dispositional order. According to him, DSHS made the assumption that only the services listed in the order were required to be offered, and it used this assumption to conclude that no services were available.

Corbett argues that services were available "in abundance," even if they did not "identically match the disposition order." Brief of Appellant at 17. Corbett points to evidence in the record that classes such as parenting, AA, NA, the Redemption Program, anger management, were available at the facility, and that he participated in some of the available programs. He also cites to testimony that outside evaluators and treatment providers were permitted to come to the facility and work with inmates, and that he made repeated requests for a mental health evaluation. However, even accepting the truth of these assertions however, does not undermine the trial court's conclusions because they are supported by findings of fact, which in turn, are supported by substantial evidence. The existence of other evidence that may have supported other findings of fact is irrelevant to our inquiry. In re Welfare of A.G., 155 Wn. App. 578, 588, 229 P.3d 935 (2010).

Corbett also argues that DSHS ignored its statutory duty because it moved to strike the ordered services a mere seven months after the order had been entered. He contends that parents are given a twelve month period during which they must begin to substantially improve their deficiencies. He cites to RCW 13.34.180(1)(e), which establishes a rebuttable presumption, not a grace period. Under the statute, "[a] parent's failure to substantially improve parental deficiencies within twelve months following entry of the dispositional order shall give rise to a rebuttable presumption that there is little likelihood that conditions will be remedied. . . ." But since DSHS did not rely on the presumption to establish that there was little likelihood that conditions would be remedied, it has

No. 74460-7-I/14

no application here.

     Affirmed.

Spearman, J.

WE CONCUR:

Trickey, ACJ

Schindler, J