[No. 49036-8. En Banc. June 16, 1983.]

*In the Matter of the Welfare of*
ADRIAN T. HALL.

*Mary Opgenorth,* for appellant (appointed counsel for appeal).

*Kenneth O. Eikenberry, Attorney General,* and *Byron L. Brown, Assistant,* for respondent.

*Harry F. Reinert* and *Luvern V. Rieke,* amici curiae.

UTTER, J.—This case presents the issue of whether and under what conditions appointed counsel in a child deprivation proceeding may withdraw from a frivolous appeal. We hold that, absent the client's consent, such withdrawal is never permitted and deny counsel's motion to withdraw in the present case. We also raise and consider two sub-

stantive issues sua sponte and, while not finding them frivolous, conclude there was no error in the present case.

The State instituted this action pursuant to RCW 13.34-.180 to terminate the parent–child relationship of appellant, Clayton Hall, and his wife, Debra Hall,[1] with their son, Adrian. At the time of the hearing, January 19, 1981, Adrian had been a dependent child for slightly more than 2 years and was living with foster parents in Pierce County. Mr. Hall was living at a work release facility in Bellingham, from which he was to be released in 8 months. Mr. Hall has never lived with Adrian, who is 4, and they have had only short visits.

Mr. Hall conceded that he and Adrian do not have a warm relationship and that it would take some time to develop one, but testified that he desired to make a sincere effort. Witnesses testified that Mr. Hall is an active, intelligent man capable of forming normal loving relationships. His probation officer testified that he was a "model resident" and was making "excellent progress" at work release where he was attending college full time and working half time. On the other hand, caseworkers testified that Mr. Hall lacked parenting skills. While they felt he could develop such skills, they were concerned that he had not followed their suggestions that he take courses or read books about parenting. All Mr. Hall had done was take one child psychology course, though there was no evidence that he had access to any further courses or any child development books. The caseworkers did not refer Mr. Hall to any specific books, courses, or counseling.

The caseworkers did arrange visitations between Mr. Hall and Adrian. In general, the visits which Mr. Hall made went well; however, he missed several appointments and was late for others due to transportation and work scheduling problems.

The caseworkers emphasized that it was very important

---

[1]Mrs. Hall, whom Mr. Hall was in the process of divorcing, did not appear at the hearing. Her attorney indicated that he was unaware of her whereabouts.

to settle Adrian into a permanent home before he became much older. One caseworker also testified that it would be very difficult to place Adrian in an adoptive home once he became older and that she had no indication that either of his parents would be able to provide a home in the near future. Another caseworker believed that it would be quite difficult for Mr. Hall to alter his active and busy life to care for Adrian.

The trial court concluded that the State had carried its burden of proof (*see* RCW 13.34.190) and ordered termination of the parent–child relationship of Mr. Hall and Adrian. Mr. Hall then filed this appeal.

After reviewing the case Mr. Hall's attorney filed a brief citing *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967) and seeking to withdraw on the ground that the appeal was frivolous. Counsel made no attempt to mail a copy of her brief to Mr. Hall, however, and two attempts at service by the Court of Appeals failed because it did not have Mr. Hall's correct address. The case was certified to this court and after oral argument we requested additional briefing on one potentially meritorious issue. We were also able to finally serve Mr. Hall.

## I

We deny counsel's motion to withdraw, for two reasons. First, the conditions for withdrawal of counsel enunciated in *Anders* are not satisfied here. Second, we deem it inadvisable to apply *Anders* to appeals in child deprivation proceedings and hold that appointed counsel may never withdraw from such an appeal, absent client consent.

*Anders* requires that four conditions be satisfied before withdrawal of appointed counsel in a criminal appeal will be permitted. First, counsel must submit a brief referring to anything in the record that might arguably support an appeal. Second, a copy of counsel's brief must be provided to the client. Third, the client must be given an opportunity to raise any points he or she chooses. Finally, the appellate court itself must examine the record and confirm

counsel's contention that the appeal is truly frivolous. If any one of these conditions is not met, counsel's motion to withdraw must be denied. *Anders,* at 744.

These conditions do not appear to have been met in the present case. First, Mr. Hall was not properly served with a copy of counsel's brief. Such service, we emphasize, is primarily *counsel's* responsibility. While the appellate court should attempt to serve the client as well, *counsel* has the ultimate responsibility for assuring that an indigent client is made aware of events or showing good cause for failure to do so. The form of counsel's brief was also inadequate. Counsel seeking to withdraw should not merely set out the facts and then argue why they do *not* constitute meritorious grounds for an appeal, as counsel has done here, but should also outline arguments which might be made from the facts. *Cf. State v. Allen,* 75 Wn.2d 17, 17–18, 448 P.2d 332 (1968) (attorneys seeking to withdraw "have filed briefs and have, in the highest tradition of the profession, argued those assignments of error which they believed their clients would want to have presented and which, in their judgment, contained some arguable merit"). Argument as to why the appeal is frivolous, if included, should be set out in a clearly separate section of the brief.

In any event, we do not believe *Anders* is applicable to appointed counsel in child deprivation proceedings. The right of concern in *Anders* was the federal constitutional right to counsel in criminal cases. In contrast, the right involved in the present case is the right to counsel in child deprivation proceedings which, except in limited circumstances, finds its basis solely in state law. *See In re Luscier,* 84 Wn.2d 135, 138, 524 P.2d 906 (1974); RCW 13.34.090; *cf. Lassiter v. Department of Social Servs.,* 452 U.S. 18, 31, 68 L. Ed. 2d 640, 101 S. Ct. 2153 (1981) (right to counsel in child deprivation proceedings guaranteed by federal constitution only in limited circumstances). Moreover, a criminal defendant, who must be at least competent to stand trial, will have not only the opportunity but at least some modicum of ability to present his or her own

argument to the appellate court. In contrast, the respondent in a child deprivation proceeding may be entirely incompetent and entirely unable to raise potentially meritorious issues. In such circumstances, withdrawal of counsel should not be permitted.

We therefore hold that, absent client consent, withdrawal of counsel on appeal in a child deprivation proceeding will never be permitted. While our central concern is those clients who are incompetent, we believe that case–by–case competency hearings would be too cumbersome a process and find a blanket prohibition on withdrawal the preferable approach. While this may require counsel to argue some frivolous appeals, we believe this is a small price to pay for assuring that the rights of all parents are fully protected. We also note that pursuing such an appeal would not constitute unethical conduct. While CPR DR 7–102(A) does generally prohibit an attorney from arguing a frivolous claim, CPR DR 2–110(A) prohibits an attorney from withdrawing from a case without the court's permission where court rules require such permission. Where an appellate court refuses to allow appointed counsel to withdraw, arguing even a frivolous appeal does not violate CPR DR 7–102(A).

## II

Having denied counsel's motion to withdraw, we now consider two substantive issues which we believe are not entirely frivolous. To assure adequate representation of Mr. Hall, we have requested and received additional briefing in an adversary posture by counsel for both Mr. Hall and the State. *Cf. Anders,* at 744 (court which denies motion of appellate counsel to withdraw "must, prior to decision, afford the indigent the assistance of counsel to argue the appeal").

## A

One factor emphasized by the trial court was the effect continuance of the parent–child relationship would have on Adrian's adoptability. It expressly found that "continuation

of the relationship [between Mr. Hall and Adrian] diminishes the prospects for integration of the child into a stable home via adoption, which [Adrian] is found to need." Clerk's Papers, at 6. Presumably the trial court relied upon this finding.

There is some split of authority in the Court of Appeals on the issue of whether a court may consider adoptability in deciding whether to terminate a parent–child relationship. In *In re Akers,* 22 Wn. App. 749, 592 P.2d 647 (1979), the court broadly stated: "Consideration of adoptability [*i.e.,* the probability of adoption?] of deprived children should not be considered by a trial judge in a deprivation hearing." *Akers,* at 757. In *In re Tarango,* 23 Wn. App. 126, 595 P.2d 552 (1979), on the other hand, the court held that a court could consider the need for placement with adoptive parents. *Tarango,* at 130–31. *See also In re Clark,* 26 Wn. App. 832, 838, 611 P.2d 1343 (1980).

Whether the trial court considered the need for adoption, as permitted by *Tarango,* or the probability of adoption, as prohibited by *Akers,* or both, is somewhat unclear. In any event, consideration of both was proper in the circumstances of this case. One of the facts which RCW 13.34.190 requires the State to prove in a deprivation hearing is "[t]hat continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home". RCW 13.34.180(6). If the chance of successful placement with adoptive parents diminishes with age, as one caseworker testified here, continuation of the parent–child relationship will reduce prospects for integration into a permanent home. The decline in Adrian's adoptability was thus quite relevant. The case relied upon in *Akers, In re Hendrickson,* 7 Wn. App. 485, 499 P.2d 908 (1972), appears to be a case where there was no initial showing that the parents had fallen below minimal standards and would be unable to correct their deficiencies in the near future. *See Hendrickson,* at 487. Once such a showing has been made, as RCW 13.34.180 does require (*see* RCW 13.34.180(1), (5)), consid-

eration of the child's alternatives is not only permissible but highly desirable. To the extent that it implies anything to the contrary, we overrule *Akers*.

## B

■ The sole issue suggested by Mr. Hall's counsel is insufficiency of the evidence to support the trial court's findings. We will not disturb the findings of the trial court as long as they are supported by "substantial evidence". *In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). This deference to the trial court is particularly important in deprivation proceedings. *In re Aschauer*, 93 Wn.2d 689, 695, 611 P.2d 1245 (1980). On the other hand, since the State must prove its case by clear, cogent, and convincing evidence, the evidence must be more substantial than in the ordinary civil case in which proof need only be by a preponderance of the evidence. *In re Sego, supra* at 739.

RCW 13.34.180 sets forth six facts which the State must allege and prove in a deprivation hearing.

(1) That the child has been found to be a dependent child under RCW 13.34.030(2); and

(2) That the court has entered a dispositional order pursuant to RCW 13.34.130; and

(3) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency under RCW 13.34.030(2); and

(4) That the services ordered under RCW 13.34.130 have been offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been offered or provided; and

(5) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future; and

(6) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home;

It is uncontested that Adrian was declared a dependent child and placed with foster parents more than 2 years prior to the hearing—this satisfies the first three condi-

tions. While not uncontested, there is also ample evidence from which the court could conclude that Adrian could not be returned to Mr. Hall within the near future and that termination was necessary to insure Adrian's integration into a stable and permanent home. Mr. Hall was to remain in work release for another 8 months and caseworkers were not optimistic about his ability to provide a proper home for Adrian immediately upon release. There was also testimony that it was important to quickly integrate Adrian into a permanent home and that delay would significantly decrease the likelihood of adoption.

Proof of the fourth condition—that the State had offered or provided all necessary and reasonably available services which might correct Mr. Hall's parental deficiencies within the foreseeable future—is less clear. One of the State's own witnesses, as well as Mr. Hall, testified that he had the ability to learn parenting skills. This testimony was uncontradicted. Yet the State produced no evidence that it had offered or provided Mr. Hall with any training or counseling in parenting skills. Neither did the State produce any evidence to show that such services were not reasonably available. While several caseworkers suggested to Mr. Hall that he take courses or read books on parenting, the statute requires the State to affirmatively offer or provide necessary services. *See* RCW 13.34.180(4); *cf. In re Jones,* __ Ind. App. __, 436 N.E.2d 849, 854 (1982) ("merely informing the [parents] of what was to be corrected for the return of [their child], does not rise to the level of providing reasonable services"). This is not a case where a parent refused services or referrals which were actually offered. *Cf.* cases cited in *In re Jones, supra* at 853–54. When the State suggests remedial services to a parent, it has an obligation under RCW 13.34.180(4) to at least provide him or her with a referral list of agencies or organizations which provide the services. No such effort was made here.

Nonetheless, we do not believe that there is insufficient evidence to support the trial court's decision. While the State's "suggestion" of parenting training was insufficient

to satisfy RCW 13.34.180(4), there is evidence in the record from which the trial court could have concluded that such services would not have made Mr. Hall a good parent in the "foreseeable future". The State's witness indicated that such change would require a great effort on his part and Mr. Hall himself conceded that he could not begin to care for Adrian immediately. That period of time which constitutes the "foreseeable future" depends in part on the age of the child. *Cf.* J. Goldstein, A. Freud & A. Solnit, *Beyond the Best Interests of the Child* 43 (1973) ("Three months may not be a long time for an adult decisionmaker. For a young child it may be forever"). In light of Adrian's age and the testimony just outlined, we cannot conclude that there was insufficient evidence to support a conclusion that parenting skills training would not remedy Mr. Hall's lack of skills in the foreseeable future.

The decision of the trial court is affirmed.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, BRACHTEN-BACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.