

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2015 MAR -9 AM 9: 43

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Dependency of:

Dv.R.,
DOB: 2/22/08,

Dn.R.,
DOB: 5/17/06,

F.R.,
DOB: 8/13/04,

Minor Children.

LAN TRAN,

Appellant,

v.

STATE OF WASHINGTON,
DEPARTMENT OF SOCIAL AND
HEALTH SERVICES,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

No. 71354-0-I
(consolidated with 71355-8-I,
71356-6-I, 71357-4-I, 71358-2-I,
71359-1-I)

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 9, 2015

BECKER, J. — Lan Tran appeals from the order terminating her parental rights to her three sons. She contends that the Department of Social and Health Services (DSHS) should have provided trauma focused cognitive behavioral therapy (TFCBT) for two of the children. Because substantial evidence supports the trial court's determination that DSHS offered or provided all services

reasonably available and capable of correcting Tran's parental deficiencies, we affirm.

Lan Tran is the mother of three sons, FR, DnR, and DvR, who were nine, seven, and five at the time of the termination trial in October 2013. Frank Rudolph, the boys' father, pleaded guilty to assaulting Tran and FR, and the couple divorced in 2009. The court terminated Rudolph's parental rights in April 2013. Tran also has two older sons, who were not parties to the dependency or termination proceedings.

In 2011, Tran remarried and had a daughter, KN, with her new husband. KN was the subject of an agreed dependency proceeding, but the court eventually dismissed the dependency and returned KN to her parents' home.

Tran has assigned error to only two of the trial court's extensive findings of fact. The unchallenged findings are verities on appeal. In re Dependency of J.A.F., 168 Wn. App. 653, 667, 278 P.3d 673 (2012).

Beginning in 2009, Child Protective Services (CPS) investigated a series of reports that Tran was leaving FR, DnR, and DvR unsupervised in dangerous situations. CPS determined that Tran had repeatedly left the three boys with neighbors, occasionally with insufficient food, diapers, or clothing. She sometimes failed to pick them up at the appointed time. Tran acknowledged that on one occasion, she left the children with others for more than 24 hours, while she remained sick in her own apartment. Later, Tran began sending the children to day care. But she repeatedly picked them up late and left them for more than the allowed 10 hours per day.

In September 2009, CPS investigated a referral that the two oldest boys were outside unsupervised on an apartment balcony. Upon arrival, the CPS worker discovered that the three boys were in the care of a 12-year-old babysitter, who said that the older boys would not listen to her. The apartment manager reported that he had seen the boys hanging over the balcony.

DSHS offered Tran a safety plan and referrals for various services, including mental health and domestic violence counseling, family preservation services, day care, and public health nurse services.

On March 12, 2010, Tran entered into an agreed dependency and disposition for the three boys. As part of the disposition, Tran agreed to participate in family preservation services and follow any recommendations, continue weekly mental health counseling and follow treatment recommendations, participate in domestic violence victims counseling services, obtain a psychological evaluation with parenting component, and follow an action/safety plan that specified, among other things, procedures she should follow when leaving the children with DSHS approved neighbors.

Dr. Joanne Solchany conducted Tran's psychological evaluation and assessed her interaction with FR, DnR, and DvR. She diagnosed Tran with dysthymic disorder, characterized by a pervasive depressed mood, persistent low energy, fatigue, low self-esteem, difficulty making decisions, and difficulty in caring for herself and the children without the help of others. After observing the three boys together, Dr. Solchany noted that "together [they] create a demanding

environment and then none of their individual needs gets the attention they deserve and need."

Dr. Solchany acknowledged that Tran seemed to love her children and want the best for them. She concluded, however, that Tran's depressed mood and low energy levels left her overwhelmed and frustrated by her inability to attend to the demanding behavioral and emotional needs of the three active children. Dr. Solchany recommended that Tran be evaluated for antidepressant medication, engage a parenting coach, and seek regular overnight "respite" from the three boys. Dr. Solchany concluded that at least one of the children would suffer serious or dangerous consequences from their behavioral and emotional issues unless Tran developed adequate parenting skills.

In March 2011, Tran remarried, and in July 2011, she gave birth to her daughter KN. Although Tran generally participated in the required services, she continued to leave the boys in potentially dangerous situations, including dropping FR off at school up to 90 minutes before school started in the morning. She continued to be late in picking up the boys from day care and, on at least one occasion, left them overnight. In March 2011, FR returned home from school to find the door to his apartment locked. FR went to the apartment business center and was eventually transported to day care.

On April 4, 2011, the court granted DSHS's petition to remove the three boys from Tran's home. The boys moved into a foster home, where they have remained throughout the dependency and termination proceedings. Following the boys' removal, Tran has participated in twice-weekly supervised visits. But

she has failed to make sufficient progress to increase the frequency of the visits, which have generally remained chaotic as a result of Tran's inability to interact with the boys or impose consistent discipline.

Therapist Cassandra Ellsworth performed a mental health assessment of the children. She diagnosed all three with posttraumatic stress disorder (PTSD). In addition, DvR suffered from separation anxiety and dissociative disorder. Symptoms included aggressive behaviors, poor sleeping and eating habits, and an inability to concentrate.

DSHS filed petitions seeking to terminate Tran's parental rights on February 8, 2013. Following a 12-day trial, the trial court entered orders terminating her parental rights to FR, DnR, and DvR on December 2, 2013.

To prevail in a petition to terminate parental rights, the State must prove the six statutory elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence:

> (a) That the child has been found to be a dependent child;
> (b) That the court has entered a dispositional order pursuant to RCW 13.34.130;
> (c) That the child has been removed or will, at the time of the hearing, have been removed from the custody of the parent for a period of at least six months pursuant to a finding of dependency;
> (d) That the services ordered under RCW 13.34.136 have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided;
> (e) That there is little likelihood that conditions will be remedied so that the child can be returned to the parent in the near future. . . .
> . . . .

> (f) That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home.

"Clear, cogent, and convincing evidence exists when the ultimate fact in issue is shown by the evidence to be 'highly probable.'" In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995) (internal quotation marks omitted), quoting In re Sego, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). The deference accorded the trial court's advantage of having observed the witnesses is "particularly important in deprivation hearings." In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983).

In addition to establishing the statutory elements of RCW 13.34.180(1), the State must also prove, by a preponderance of the evidence, that termination is in the best interests of the child. RCW 13.34.190(2).

On appeal, it is undisputed that sufficient evidence supports the trial court's determinations that FR, DnR, and DvR were found to be dependent, that the court entered the appropriate dispositional orders, that the boys were removed from Tran's custody for at least six months following the dependency findings, that there is little likelihood that conditions will remedied so that the children can return to Tran in the near future, that continuation of the parent-child relationship clearly diminishes the children's prospects for early integration into a stable and permanent home, and that termination is in the children's best interests. Nor has Tran challenged the court's findings that she is currently unfit to parent the three children and that despite Tran's participation in court-ordered

services for four years, she has failed to make any meaningful progress in correcting those deficiencies.

Rather, Tran contends that DSHS failed to satisfy its burden of providing all necessary services under RCW 13.34.180(1)(d) because it did not refer FR and DnR for "trauma focused cognitive behavioral therapy," despite the recommendation of the Foster Care Assessment evaluator. She argues that TFCBT could have helped the two older boys eliminate or reduce some of their behavioral and emotional problems, which in turn, would have reduced the level of chaos during Tran's visits with the children. Tran claims that had the boys participated in TFCBT, she would have felt less overwhelmed and been "more receptive" to correcting her deficiencies through parenting services.

Tran's arguments rest on the recommendation of social worker Anthony Kliment, the Foster Care Assessment Program (FCAP) evaluator. Kliment completed a standard FCAP evaluation of FR, DnR, and DvR in December 2012. A standard FCAP evaluation focuses on the specific needs of a child in foster care and attempts to determine what will assist the child to thrive in his or her current setting. Kliment did not undertake a reunification FCAP evaluation.

Kliment recommended that all three boys remain in their current foster placement and that FR and DnR receive mental health counseling. In particular, Kliment recommended that FR and DnR receive TFCBT, which he characterized as clinically proven to be effective in cases involving trauma, abuse, and neglect. DSHS did not refer the boys for TFCBT.

Cassandra Ellsworth, who provided counseling for both FR and DvR, stated that TFCBT usually involves "ten to twelve sessions and is heavily focused on creating coping skills for the client and walking through a trauma narrative and successfully decreasing their triggers until they are no longer symptomatic of trauma." Kliment believed that TFCBT could alleviate the boys' symptoms of PTSD, such as sleep difficulties, difficulties in concentrating, behavior issues, and problems involving acting out and avoidance.

Ellsworth, who was FR's first therapist and a certified TFCBT provider, attempted to use "the very beginning pieces" of TFCBT in her sessions, such as persuading FR to identify and discuss the underlying trauma. But FR was not receptive to the techniques. Therapist Christina Hanson, who was not certified for TFCBT, provided counseling services to FR after Ellsworth. Hanson testified that TFCBT might have, although "not necessarily," facilitated the boys in reaching their treatment goals more quickly had she been a certified provider at the time. Dr. Solchany acknowledged that TFCBT was "definitely a good mode of treatment" and very effective in certain cases but stressed that it was not the only method for treating PTSD in children.

Even if TFCBT was an appropriate method of treatment for FR and DnR, nothing in the record suggests that successful treatment would have had any effect on Tran's ability to correct her parental deficiencies.

Although all three boys were still participating in therapy at the time of the termination trial, they had all made substantial progress and met significant



treatment goals without TFCBT. The sleep and food related problems were generally resolved, and all three boys were doing relatively well in school. The court-appointed special advocate (CASA) testified that the boys' behavior in their foster home had improved to the point that they were not experiencing any particular difficulties.

Nonetheless, despite more than two years of twice-weekly supervised visits, Tran failed to demonstrate any significant progress in her ability to provide structure or discipline during the visits or interact in a positive manner with the children. Connie Lewis, who supervised the visits, testified that the visits remained "very chaotic for the most part." Tran often remained passive and unwilling or unable to take control of the changing circumstances. Lewis would sometimes have to step in and help control the children or end the visit.

Moreover, Tran's parental deficiencies involved more than her difficulties in controlling and interacting with the children during the visits. The evidence also established Tran's profound inability to recognize the consequences of her chronic neglect of the boys and her failure to supervise them, her inability to recognize or respond to their special needs, her failure to apply the lessons of numerous parent-coaching sessions, her failure to recognize the dangers posed by continuing abusive relationships, and uncertainties about the strength of her support network. Lewis, the CASA, and social workers agreed that Tran would not be able to safely parent the three boys, in addition to her daughter KN, without supervision. The trial court's finding that the boys' return to Tran's

unstructured care would likely result "in regression and exacerbation" of their previous symptoms is unchallenged.

Given the undisputed severity of Tran's parental deficiencies and her failure to make any meaningful progress despite four years of services, nothing in the record supports an inference that FR's and DnR's participation in TFCBT would have facilitated Tran in correcting her parental deficiencies. Substantial evidence supports the trial court's determination that all services reasonably available and capable of correcting Tran's parental deficiencies were offered or provided.

Affirmed.

Becker, J.

WE CONCUR:

Appelwick, J.

Cox, J.