IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Termination of | ) | No. 35015-1-III |
| | ) | |
| Z.K.F.[†] | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

KORSMO, J. — A mother challenges the termination of her parental rights to her daughter, arguing that not all necessary services were provided and that it was not in the best interest of the child to end their relationship. We affirm.

FACTS

C.P. is the mother of Z.K.F. C.P. came to the attention of the Department of Social and Health Services (DSHS) after a referral from the local prosecutor's office. That office was concerned about C.P.'s mental health and the existence of severe domestic violence in her relationship with her boyfriend.[1] Concerns were raised that the

---

[†] To protect the privacy interest of Z.K.F., a minor, we use initials throughout this opinion. General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/ appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

[1] The boyfriend was not the child's father. The father voluntarily relinquished his parental rights and is not a party to this appeal.

abuse affected her ability to care for her child and to acquire safe and stable housing.

DSHS provided referrals for domestic violence advocacy services as well as mental health and housing services. A no contact order separated C.P. and her boyfriend. Z.K.F. alternated homes, living two weeks with each parent each month. The following year Z.K.F. disclosed sexual abuse by her father and DSHS began a dependency action. C.P. was homeless and initially could not be found. Once located, a social worker offered to assist with housing, but C.P. was not interested. The caseworker also tried to arrange visitation between C.P. and Z.K.F. The child was placed with a relative living out of town. C.P. did not want to travel to see her daughter, but wanted her daughter to travel to visit her.

After a contested trial, the court found the child dependent. The social worker recommended that the court order C.P. to participate in a substance abuse evaluation, a mental health evaluation, a psychological evaluation, random urinalysis testing, sexual victimization counseling, and domestic violence victim's assessment and education. However, the court also determined that the evidence did not support finding that C.P. had drug, alcohol, or mental health problems. The court did order C.P. to participate in parenting education, attend a domestic violence victim assessment, and receive housing assistance.

The social worker referred C.P. to local providers of the noted services. C.P. was able to obtain housing at Haven of Hope, but was unable to comply with the facility's

2

guidelines and left after a few weeks. DSHS did not know where C.P. lived after that, although she maintained some contact with the caseworker. After missing several visits, the court suspended C.P.'s visitations with Z.K.F., although that right was later restored.

C.P. took part in a clinical parenting assessment that led clinical social worker Rebecca Springer to express concerns about C.P.'s parenting skills and style. The mother thrust the obligation of care-taking on the child instead of the other way around. C.P. declined parenting education even though Ms. Springer thought she would benefit from it. C.P. also underwent an assessment with a clinical psychologist. The doctor diagnosed C.P. with moderate or current major depression, alcohol and cannabis dependence with current use, and "a rule out" of posttraumatic stress disorder. The doctor, who believed the prognosis for C.P.'s parenting ability was poor, saw C.P. for therapy twice in December 2015, and again on May 11, 2016. C.P. never returned for additional therapy.

On February 3, 2016, the court found that C.P. had failed to comply with the court's dependency order by not participating in parenting classes, the mental health assessment recommendations, or counseling for Z.K.F.'s sexual victimization. The court ordered additional services, including a psychological evaluation, a drug and alcohol evaluation, and other services. Soon thereafter C.P. missed three scheduled visits with Z.K.F. and visitation again was suspended. A third referral to Children's Home Society for weekly in-home parenting services lasting 12 to 18 weeks was attempted, but after

only four meetings during a two month period, C.P. asked to discontinue the in-home education.

Visitation was reinstated in April 2016, but lack of compliance and progress in parenting led the court to change the child's permanent plan to adoption. A petition to terminate parental rights was filed in June 2016. C.P. continued to have trouble finding a stable living situation through the trial in December 2016. C.P. was not present for the trial. The court found that while C.P. had completed the parenting and psychological evaluations and had participated in four parenting sessions and three therapy sessions, she had not completed any sessions for parents of sexually abused children, nor had she completed domestic violence treatment. The court further found that C.P. had a "chronically unstable lifestyle that is unsuitable for a child."

Z.K.F. had been living in relative placement since April 2015, but the social worker believed the placement could not become permanent without adoption; the guardian ad litem also believed terminating parental rights was in the child's best interest. The court concluded that termination of C.P.'s parental rights was in the child's best interest and granted the termination petition.

Written findings and conclusions of law were entered soon thereafter, formally terminating the parent-child relationship. C.P. promptly appealed to this court. A panel considered the matter without oral argument.

ANALYSIS

C.P. contends both that the evidence does not support the determination that all reasonable available services were offered or provided, and that termination of the parent-child relationship was not in the child's best interest. We will address those two contentions in the order noted.

*Services Offered*

The parties debate whether appropriately tailored services were made available to C.P. We agree with the trial court's assessment that they were.

In order to terminate the parent-child relationship, the State first must establish the six elements of RCW 13.34.180(1).[2] The trial court then must find by clear, cogent, and convincing evidence that the parent is currently unfit. *In re Welfare of A.B.*, 168 Wn.2d 908, 918, 232 P.3d 1104 (2010). "'Clear, cogent, and convincing' means highly probable." *In re Welfare of M.R.H.*, 145 Wn. App. 10, 24, 188 P.3d 510 (2008). The trial court's findings are entitled to great deference on review and those findings will be upheld when supported by substantial evidence. *In re Dependency of K.S.C.*, 137 Wn.2d 918, 925, 976 P.2d 113 (1999). Substantial evidence is that sufficient to persuade a fair-

---

[2] The State must present evidence establishing that (1) the child has been found to be dependent, (2) the court has entered a dispositional order, (3) the child has been removed from the custody of the parent for at least six months, (4) all the necessary services have been afforded to the parent to correct the parental deficiencies, (5) there is little likelihood of remedying the parental deficiencies, and (6) continuation of the parent-child relationship clearly diminishes the child's prospects of permanent placement. RCW 13.34.180(1).

minded, rational person of the truth of the evidence. *World Wide Video, Inc. v. City of Tukwila*, 117 Wn.2d 382, 387, 816 P.2d 18 (1991).

The fourth statutory factor is the one at issue in this appeal:

That the services ordered under RCW 13.34.136[3] have been expressly and understandably offered or provided and all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided.

RCW 13.34.180(1)(d). It also is the State's burden to establish this factor, as with all six of the § 180 factors, by clear, cogent, and convincing evidence. RCW 13.34.190(1)(a)(i).

When a parent has unique needs, DSHS must offer services tailored to meet the parent's unique needs. *In re Hall*, 99 Wn.2d 842, 850, 644 P.2d 1245 (1983); *In re Dependency of D.A.*, 124 Wn. App. 644, 651, 102 P.3d 847 (2004). DSHS, "however, is not required to offer services when a parent is unable to benefit from the services." *In re Welfare of S.J.*, 162 Wn. App. 873, 881, 256 P.3d 470 (2011). Further, "even where the State inexcusably fails to offer a service to a willing parent . . . termination is appropriate if the service would not have remedied the parent's deficiencies in the foreseeable future." *In re Dependency of T.R.*, 108 Wn. App. 149, 164, 29 P.3d 1275 (2001).

---

[3] RCW 13.34.136 requires the creation of a permanency plan for determining the child's future living situation. The permanency plan is developed in conjunction with the dependency action. RCW 13.34.136(1).

Here, the mother claims that several necessary services were not provided, or were not provided together. However, the record reflects that all *necessary* services were, in fact, provided. RCW 13.34.180(1)(d) only applies to services ordered by the trial court in the dependency action. RCW 13.34.136. Thus, the mother's unrequited requests for a rental car, drug treatment in Malibu, California, and on-line courses, all are without merit because the dependency judge never ordered such services.

C.P. also argues that the court did not timely order psychological and substance abuse evaluations and treatment, and also failed to order them in a co-occurring manner. The issue first came up during the dependency hearing, with C.P. *opposing* the social worker's requests that she be evaluated and treated in both of those areas. The trial court found the evidence insufficient to order the evaluations. It was only after C.P. requested treatment that the court had a basis for reconsidering the issue and ordering the services. At that point, the evaluations were conducted and the treatment ordered. The services were as timely provided as C.P. allowed them to be.

She also argues that the psychological and substance abuse services needed to be co-occurring, but she can cite to nothing in the record that would support her claim. The services were occurring during the same time period, but if they needed to be conducted in some other manner than they were offered, some type of evidence from a therapy provider would be necessary to establish why the current efforts were failing. There simply is nothing to support this contention.

7

Similarly, C.P. insists she was cognitively impaired and not treated appropriately, but the evidence simply does not bear her theory out. She was seen by two psychologists who managed to find other mental health problems, but made no findings of cognitive impairment. This contention is without merit.

DSHS offered all court-directed services in the appropriate manner. C.P. declined to participate in several of them and only occasionally participated in other services. Clear, cogent, and convincing evidence supports the trial court's determination that all ordered services were provided.

*Best Interest of the Child*

C.P. also argues that termination of the parent-child relationship was not in the best interest of Z.K.F. The evidence supports the trial court's contrary determination.

If DSHS meets its burden as to the six termination factors of RCW 13.34.180(1), then "the trial court must find by a preponderance of the evidence that termination is in the best interests of the child." *M.R.H.*, 145 Wn. App. at 24 (citing RCW 13.34.190(2)); *In re Dependency of K.N.J.*, 171 Wn.2d 568, 576-577, 257 P.3d 522 (2011) (citing RCW 13.34.190(1)(b)). C.P. primarily argues that because she did not receive all necessary services, then automatically the best interest of the child standard was not satisfied. Since we have rejected her argument about necessary services, this derivative argument is without merit.

Moreover, the record supports the best interest determination. At the time of trial, Z.K.F. was seven and had lived with the same family member for the last 20 months. She had not seen her mother for two months, and only sporadically before that. C.P. was still not in a position to care for herself, let alone raise a child. The prognosis for C.P. becoming even a minimally adequate parent was poor. The social workers and the guardian ad litem all believed that adoption was in the child's best interest to allow her to integrate into a stable home. There was no competing evidence suggesting otherwise.

The evidence supports the trial court's determination that the child's best interest was served by terminating the mother-child relationship.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Lawrence-Berrey, J.

9