IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

In the Matter of the Dependency of M.R.D., (DOB 10/01/2018),

Minor Child,

LEANNA HANSON,

Petitioner,

v.

THE STATE OF WASHINGTON, DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES,

Respondent.

No. 82195-4-I

DIVISION ONE

UNPUBLISHED OPINION

ANDRUS, A.C.J. — Leanna Hanson appeals an order terminating her parental rights to daughter, M.R.D. She contends the trial court erred in finding that the Department of Children, Youth, and Families (Department) expressly and understandably offered her all court-ordered services. We affirm.

FACTS

M.R.D., a two-year-old child, was removed from her mother, Leanna Hanson, at birth after M.R.D. tested positive for opiates. On December 21, 2018, Hanson agreed to an order of dependency for M.R.D. In that order, Hanson admitted she had used heroin and methamphetamine throughout her pregnancy.

Citations and pin cites are based on the Westlaw online version of the cited material.

Because of these substance abuse issues, Hanson acknowledged that she was unable to care for M.R.D. M.R.D. has never lived with Hanson and has lived with her maternal grandparents for most of her life.

In an agreed dispositional order, the court required Hanson to undergo random urinalysis twice a week for 60 days, to be followed by once weekly testing for 30 days. The order further required Hanson to submit to a drug and alcohol evaluation and follow the recommended treatments, obtain a parenting assessment and follow recommendations from those services, and complete in-home parenting instruction at the time of reunification. The order directed Hanson to cooperate in selecting a mutually agreed-upon provider for her parenting assessment.

In addition, the order established a visitation plan that allowed Hanson to see M.R.D. twice a week for two hours per visit and indicated that further visitation could be authorized at the discretion of M.R.D.'s grandparents.

The court held a dependency review hearing on March 7, 2019 to evaluate Hanson's compliance with court-ordered services and her progress at addressing her parental deficiencies. Hanson did not attend the hearing. Based on the Department's uncontested evidence, the trial court found that Hanson had not visited M.R.D. on a regular basis and had not seen her since December 2018. The court further found that the Department was making reasonable efforts to provide services to Hanson but she was not in compliance with the dependency order and was not making progress toward correcting the problems that necessitated M.R.D.'s removal from her care. Hanson's counsel did not contest these findings.

Hanson again did not appear for a permanency planning hearing held on September 5, 2019. The court found that Hanson had not visited M.R.D. at all during the review period and had not engaged in any remedial services, despite the Department's reasonable efforts to provide them. The court therefore changed the primary permanency plan to adoption.

In January 2020, the Department filed a petition to terminate the parental rights of M.R.D.'s parents.[1] The following month, the trial court held another dependency review hearing. Again, Hanson did not appear and her attorney took "no position" as to Hanson's compliance with court-ordered services. And again, the court found that, while the Department had made reasonable efforts to provide services, Hanson was "not currently engaged" in or compliant with the dependency order and was still not visiting M.R.D. The court held another permanency planning hearing on July 16, 2020 and made similar findings and ordered adoption to be the only permanency plan for M.R.D.

Throughout the duration of the dependency proceedings, Department social workers including Sinead Hennessy, who was assigned the case on February 28, 2020, attempted to contact Hanson. Hennessy testified that she attempted to contact Hanson approximately a dozen times, but was only able to make contact once, in August 2020, when she learned Hanson was in the hospital. Hennessy called Hanson at the hospital, informed her about the termination proceedings, and spoke with her about services, including chemical dependency services and urinalysis testing. Hanson told Hennessy that she wanted to participate in inpatient

---

[1] The father's parental rights to M.R.D. were terminated by default on July 2, 2020. He is not a party to this appeal.

drug treatment and that she had looked into finding a service provider for treatment. Hennessy offered to help Hanson contact these service providers but Hanson declined the social worker's help. Hennessy attempted to give Hanson her contact information but Hanson refused to accept it and stated she would talk with her attorney instead. Hennessy offered to provide other support in the meantime, but Hanson again declined any support or assistance.

The Department had also sent service letters to Hanson explaining how to obtain the services required by the dependency order. The letters included names, phone numbers, and addresses of local facilities that provided drug and alcohol evaluations. Although the Department did not provide any contact information for parenting assessment providers, it directed Hanson to contact the Department social worker so the social worker could send a referral once a mutually agreed-upon provider was identified.

In October 2020 Hennessy attempted to hand-deliver the service letters to Hanson's last known address after some of the letters were returned as undeliverable.[2] When Hennessy knocked on the door, the individual who answered indicated that he had not seen Hanson in a couple of weeks.

Hennessy also delivered one of these service letters to Hanson at her parents' address because Hanson had previously listed this address as one of her contacts for services provided by the Department of Social and Health Services (DSHS). Hanson's parents had informed Hennessy that they saved Hanson's mail

---

[2] The Department maintains a database containing the last known contact information for parents involved in dependency proceedings. Hennessy also contacted Hanson's parents to confirm that the address from the database was Hanson's last known address.

and gave it to her when she occasionally showed up. Hennessy believed leaving service letters for Hanson at her parents' address was a reasonable way of ensuring she would receive them when she next turned up at her parents' house.

Hennessy further attempted to contact Hanson by reaching out five to ten times on Facebook, but there was no indication that Hanson ever read these messages. Hanson never responded to Hennessy's efforts to contact her.

Trial on the termination petition occurred on November 10, 2020. Hennessy and M.R.D.'s guardian ad litem, Virginia Whalen, both testified. Hennessy testified about the lengths to which she went to try to find Hanson and her lack of success in doing so. Both witnesses opined that Hanson's substance abuse and lack of treatment rendered her incapable of parenting M.R.D. in the foreseeable future and that termination of her parental rights was appropriate. Whalen testified that in the past two years, Hanson had probably seen M.R.D. "ten times or less," and had no bond with her daughter. She testified that the primary concern was Hanson's substance abuse which appeared to be "significantly impacting her ability to be available for [M.R.D.], which I think is demonstrated by [Hanson's] lack of visitation" and general unwillingness to engage in the dependency process.

The court terminated Hanson's parental rights on November 13, 2020.

ANALYSIS

Hanson argues that termination of her parental rights was improper because there was insufficient evidence to demonstrate that the Department had expressly and understandably offered all services reasonably capable of

correcting her parental deficiencies, as required under RCW 13.34.180(1)(d). Based on the record before us, we disagree.

Termination of the parent-child relationship involves a two-step process. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). The Department must first prove by clear, cogent, and convincing evidence each of the six termination elements set forth in RCW 13.34.180(1). Id. at 911-12. RCW 13.34.180(1)(d) requires the Department to prove that it has provided all the services ordered as part of the dependency proceedings, as well as "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future." In re M.A.S.C., 98905-2, slip op. at 14 (Wash. May. 20, 2021), https://www.courts.wa.gov/opinions/pdf/989052.pdf. "Necessary services" are those services "'needed to address a condition that precludes reunification of the parent and child.'" In re Parental Rights to K.M.M., 186 Wn.2d 466, 480, 379 P.3d 75 (2016) (quoting In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014)).

Once the court finds that the Department has proved the elements of RCW 13.34.180(1), the court may terminate parental rights if the Department also proves by a preponderance of the evidence that doing so is in the best interest of the child. K.M.M., 186 Wn.2d at 479.

In reviewing a trial court's decision to terminate parental rights, this court should assess whether the trial court's findings are supported by substantial evidence. In re M.A.S.C., slip op. at 16 (quoting In re Parental Rights to D.H., 195 Wn.2d 710, 718, 464 P.3d 215 (2020)). "The trial court's findings will not be

disturbed unless there is an absence of clear, cogent, and convincing evidence in the record." Id. Clear, cogent, and convincing evidence exists when the evidence shows the ultimate fact at issue to be highly probable. In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995). "Because of the highly fact-specific nature of termination proceedings, deference to the trial court is 'particularly important.'" K.M.M. 186 Wn.2d at 477 (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)).

In this case, the court assessed whether the Department expressly and understandably offered necessary services to Hanson and made the following finding:

> The court finds by clear and convincing evidence that the mother's court ordered services have been expressly and understandably offered or provided and all necessary services reasonably available, capable of correcting the parental deficiencies within the foreseeable future have been expressly and understandably offered or provided to the mother in this case. The Department sent the mother service letters to her last known address. The court heard testimony that some of these letters were sent back to the Department as undeliverable. However, it was undisputed that the Department also left a service letter packet with the maternal grandparents, where the child is currently placed. It is reasonable to conclude that the mother would show up at the maternal grandparent's home to visit the child and receive this information. Social worker Hennessy also went in person to the mother's last known address, confirmed that the mother has recently resided there, and left a service letter packet at this address. Finally, social worker Hennessy was able to make contact with the mother in August 2020, while the mother was in the hospital. Social worker Hennessy spoke with the mother about her court ordered services, offered to assist her in engaging in these services and offered additional supports to the mother. The mother declined the social worker[']s offer to assist her and reported that she would engage in the services on her own.

There is substantial evidence supporting the trial court's conclusion that the Department expressly and understandably offered services.

Hanson argues that there is no evidence that she ever actually received the service letters that Hennessy left at either address and that it is unreasonable to assume Hanson received them. But the law does not require the Department to prove that Hanson actually opened her mail and read the letters the Department delivered to her. Such an evidentiary burden would make termination impossible when a parent disappears or refuses to engage with the Department after agreeing to do so in a dependency order.

The record here contains substantial evidence to support the trial court's finding that the Department made reasonable efforts to offer services to Hanson to help her reunify with her child. First, throughout the dependency proceeding, the trial court repeatedly found that the Department had in fact offered Hanson services. ("DCYF has made reasonable efforts to provide services to the family and eliminate the need for out-of-home placement of the child"); Hanson never contested any of these factual findings.

Second, the Department attempted on multiple occasions to find Hanson and to deliver service letters to her, at two different residential addresses. The Department had a reasonable basis for leaving letters for Hanson at both locations. Before leaving a service letter with Hanson's parents, Hennessy confirmed that Hanson sometimes stopped by unannounced, that Hanson's mother held onto any mail delivered to Hanson at her address, and the mail was available to Hanson whenever she showed up.[3]

---

[3] On appeal, Hanson contends there is no "nonhearsay" evidence that Hanson's mail was preserved or available. Hanson made no hearsay objection to this testimony below and we decline to address any argument that the testimony constituted hearsay. See RAP 2.5(a).

Furthermore, it was reasonable for the Department to believe that Hanson would visit M.R.D. at her parents' home. Hanson was permitted to visit M.R.D. twice a week. If Hanson sought reunification with M.R.D., it was reasonable for the Department to assume she would take advantage of her visitation rights and be able to pick up her mail during such visits. Substantial evidence supports the trial court's finding that it was reasonable for the Department to offer services to Hanson by leaving a service letter for her with her parents.

Hanson next contends the Department never referred Hanson to any agency for a parenting assessment, one of the court-ordered services. Hanson analogizes her case to In the Matter of D.J.S., 12 Wn. App. 2d 1, 456 P 3d 820 (2020), in which a father stipulated to a dependency disposition order requiring him to obtain various services, including a drug and alcohol evaluation and treatment and a parenting assessment. Id. at 9. The Department, responsible for offering and providing those services, concluded the father would not benefit from parenting classes until he received treatment for his chemical dependency and decided not to refer the father for the parenting assessment until he achieved sobriety. Id. at 13. Division III concluded that the Department had failed to provide necessary services because it was not permitted to withhold an ordered service until another service was completed. Id. at 22.

This case is distinguishable from D.J.S. because the Department did not withhold or condition the parenting assessment referral on Hanson's successful completion of any other service. Hanson argues that, like D.J.S., there were two unauthorized "prerequisites" to the Department making a parenting assessment

referral: that she contact the Department and that she establish regular visitation with M.R.D. The Department's decision in D.J.S. is clearly distinguishable from the Department's conduct here.

First, while the service letters did not provide contact information for parenting assessment service providers and instead directed Hanson to contact the Department social worker for a referral, this condition was required by the dependency order, which specified that Hanson's compliance with the parenting assessment was predicated on her "cooperation in selecting a mutually agreed upon provider." Thus, unlike D.J.S., the disposition order prohibited the Department from unilaterally selecting a service provider. And the record demonstrates that neither Hanson nor her attorney ever contacted the Department in an attempt to obtain such a referral.

Second, the Department did inform Hanson that she needed to have regular visits with M.R.D. before it would make a parenting assessment referral. Hennessy testified that in a typical parenting assessment, the service provider evaluates parent/child interactions to assess the level of their bond and the manner in which they interact. Consistent visitations with the child increases the likelihood that any parenting assessment would provide meaningful recommendations for further services. But Hennessy testified, had Hanson come forward and requested a parenting assessment referral, even without her having consistent visitation, she would have made the referral. These facts were not present in D.J.S.

Even if the Department did not offer a parenting assessment to Hanson, termination would still be appropriate if that particular service would not have

remedied her parental deficiencies in the foreseeable future. In re Dep. of T.R., 108 Wn. App. 149, 164, 29 P.3d 1275 (2001). The foreseeable future varies with the child's age. Id. For young children, the foreseeable future may mean a matter of months. Hall, 99 Wn.2d at 850-51 (finding eight months not in foreseeable future of four year old).

Here, the trial court found Hanson's struggle with substance abuse and her failure to address that issue rendered her unfit to parent M.R.D. The court further found that there was little likelihood that this parental deficiency would be remedied for M.R.D. to be returned to Hanson in the near future:

> Despite the Department's repeated attempts to engage the mother and offer her services, the mother has not engaged in any of the services ordered by the court to address her parenting deficiencies. The mother's substance abuse remains untreated. She would need to engage in six to twelve months of substance abuse treatment before she would be a placement option. She has no relationship with the child or awareness of the child's physical or developmental needs. Since dependency was established, the mother has made no progress towards reunification with the child.

> Based on this child's age, needs and developmental level, their "near future" for purposes of obtaining permanency is two months or less. Based on the mother's lack of engagement so far, there is no basis to find that the parent has the motivation and/or ability to remedy their parental deficiencies within that amount of time.

Hanson does not challenge these findings and thus they are verities on appeal. In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015). The record before us is clear: the predominant issue precluding reunification was Hanson's substance abuse issues and Hanson refused to engage in any substance abuse treatment despite the Department's repeated attempts to provide such services to

her.  A parenting assessment would not have remedied these deficiencies in the foreseeable future.

We conclude that substantial evidence supports the trial court's findings that the Department met its burden under RCW 13.34.180(1)(d) to offer or provide all ordered and necessary services capable of correcting Hanson's parental deficiencies.

Accordingly, we affirm.

_Andrus, A.C.J._

WE CONCUR:

_Chun, J._                    _Verellen, J._