IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

In the Matter of the Welfare of

H.L.H.,

                      A minor child.

No. 81890-2-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — H.L.H.'s mother appeals an order terminating her parental rights to her daughter. She contends the trial court erred in finding that the Department of Children, Youth, and Families (Department) understandably offered her all court-ordered services. We disagree and affirm.

FACTS

H.L.H., born in December 2012, is a dependent child who has resided in relative care since November 2015. After a brief placement with her paternal grandfather, H.L.H. went to live with her paternal aunt with whom she has resided since.

On May 16, 2016, the mother agreed to an order of dependency for H.L.H. The mother stipulated to the fact that on November 21, 2015, she was arrested for felony assault and, when arrested, possessed controlled substances. That same day, police learned that a male friend of the mother's was inside her apartment with H.L.H. and refused to release the child to the police. Special weapons and tactics (SWAT) negotiators finally convinced the man to surrender

Citations and pin cites are based on the Westlaw online version of the cited material.

and release H.L.H. At the time the court entered the dependency order, the mother had been charged with assault with a deadly weapon. The mother stipulated that H.L.H. had no parent capable of adequately caring for her, and the child was in circumstances constituting a danger of substantial damage to her psychological and physical development.

In the agreed dispositional order, the court ordered the mother to engage in random urinalysis testing once a week for 90 days and to participate in a parenting assessment and follow its recommendations. The order also recommended, but did not require, that the mother participate in a domestic violence support group based on a history of domestic violence with H.L.H.'s father.

In August 2016, Department social worker Schawna Jones was assigned to the mother's case. Jones testified that, over the course of the dependency proceedings, she had various contacts with the mother, including telephone conversations, e-mail communication, and in-person meetings. She and the mother discussed visitation with H.L.H. and the mother's court-ordered services, and she provided the mother with a letter notifying her as to where she could access the services. In addition, Jones provided the mother a referral for a parenting assessment.

After the mother completed the parenting assessment in 2017, Jones discussed the results with her over the telephone. Because the dependency order required the mother to complete the services recommended by the assessment, Jones updated the service letter to reflect these new services. She

2

provided a list of mental health providers and their contact information and later provided the mother with a referral for parenting coaching with the Intercultural Children and Family Services through the "Triple P" program. Jones e-mailed an updated service letter to the mother on August 30, 2017. Subsequent letters and e-mails reiterated this information. In April 2018, the Department transferred the case to social worker Tahl Fox, who continued to send service letters containing this information.

Throughout the duration of the dependency proceedings, the trial court held a number of review and permanency planning hearings to assess the mother's progress toward reunification with her daughter. While the dependency order provided that the mother could visit H.L.H. at least three times a week for two hours per visit, the court found that she had largely failed to consistently or regularly visit H.L.H. In fact, in over more than four years of dependency proceedings, the mother was only found to have consistently visited her daughter between December 2017 and May 2018. By the time the mother's parental rights were terminated, she had not seen H.L.H. in over a year.

Similarly, the dependency court repeatedly found that, except for her parenting assessment, the mother had not engaged in or completed her court-ordered services and made no progress toward correcting her parental deficiencies.

In March 2019, the Department filed a petition to terminate the parental rights of H.L.H.'s parents.[1]  The court held a termination trial in March 2020.  The mother failed to appear for the trial and was unrepresented, as the court had allowed her attorney to withdraw in December 2019.  On April 14, 2020, the court terminated the mother's parental rights to H.L.H.  Unbeknownst to either the Department or the trial court, the mother was incarcerated at the time of the trial.  The Department agreed to vacate the judgment and the trial court granted the mother a new trial.

The court conducted a second trial on August 31, 2020 and September 1, 2020.  The court heard testimony from the mother, both Department social workers, and H.L.H.'s court appointed special advocate (CASA), Ruth Kennedy.  Both social workers testified about their various contacts with the mother and their attempts to refer and provide her required services.  Fox testified that the mother would occasionally reach out to the Department before disappearing again.  When the mother was absent or non-responsive, both social workers looked for her in local jail facilities because of her frequent incarcerations.

Despite their efforts, neither social worker had information to indicate that the mother was engaging in court-ordered services.  Both indicated that they had made urinalysis referrals at the mother's request, but she failed to follow through with them.  Likewise, the mother did not participate in the required parenting coaching.  Nor did she complete the recommended inpatient drug treatment or

---

[1] The father's parental rights to H.L.H. were terminated by relinquishment on February 28, 2020.  He is not a party to this appeal.

participate in any domestic violence support group sessions to the Department's knowledge.

The mother testified that she had participated in drug treatment and urinalysis testing. She stated she was required to undergo random urinalysis testing through her Department of Corrections (DOC) supervision and she was engaging in outpatient treatment through Valley Cities, which included individual counseling and group meetings. She further testified that she was engaged in a Suboxone clinic and had found clean and sober housing.

When the mother was asked whether she had participated in the therapy recommended by the parenting assessment, she responded, "No, I have not participated in therapy because I cannot find somebody to . . . provide me with that kind of . . . thing." However, Fox testified that it appeared to her that the mother had engaged in therapy at Valley Cities. She explained, "I don't know to what extent to – how often, how many times a week, how many times a month. But if she was involved with Valley Cities and . . . [Therapeutic Health Services], yes, then I would assume that she's getting some kind of clinical therapy."

Fox testified that she contacted Valley Cities' forensic case manager, Oliver Edwards, on several occasions to determine what, if any, treatment or therapy the mother was obtaining. Edwards confirmed that the mother had started services through him and was seeking an inpatient drug treatment program but had then failed to follow through with these services. When Fox last spoke to Edwards, he reported that he had not spoken to the mother in over a month and, as far as he knew, the mother had not made it into an inpatient

program.  Edwards did not indicate whether the mother was participating in urinalysis testing with Valley Cities and did not provide Fox with any urinalysis reports.

The trial court found that, despite having had years to remedy her parental deficiencies, the mother had been unable to do so.  Furthermore, "due to her unaddressed drug abuse, her failure to address her mental health, her continuing criminal lifestyle and her inability to extricate herself from [H.L.H]'s father who is violent, [the mother] is currently unfit to parent [H.L.H.]."

The trial court terminated the mother's parental rights to H.L.H. on September 1, 2020.

## DISCUSSION

The only issue the mother preserved for appeal is the sufficiency of the evidence that the Department proved that it provided the mother with "all necessary services, reasonably available, capable of correcting the parental deficiencies within the foreseeable future" as required by RCW 13.34.180(1)(d).[2] The mother maintains that the Department failed to "expressly and understandably" provide therapy as recommended in her parenting assessment.

Parental rights are a fundamental liberty interest protected by the United States Constitution.  Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71

---

[2] The mother assigned error to the trial court's findings that the termination was in the best interest of H.L.H.  However, the mother included no argument supporting this claimed error in her briefing.  As such, she has waived this assignment of error and we decline to address it.  See Sprague v. Spokane Valley Fire Dep't, 189 Wn.2d 858, 876, 409 P.3d 160 (2018) ("We will not consider arguments that a party fails to brief.").

L. Ed.2d 599 (1982). Termination of the parent-child relationship involves a two-step process. In re Welfare of A.B., 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). To terminate parental rights, the Department must first establish the six elements of RCW 13.34.180(1) by clear, cogent, and convincing evidence. Id. at 911-12. Once the court finds that the Department has proved the elements of RCW 13.34.180(1), the court may terminate parental rights if the Department also proves by a preponderance of the evidence that doing so is in the best interest of the child. In re Parental Rights to K.M.M., 186 Wn.2d 466, 479, 379 P.3d 75 (2016).

In reviewing a trial court's decision to terminate parental rights, this court should assess whether the trial court's findings are supported by substantial evidence. In re Parental Rights to D.H., 195 Wn.2d 710, 718, 464 P.3d 215 (2020). "The trial court's findings will not be disturbed unless there is an absence of clear, cogent, and convincing evidence in the record." Id. Clear, cogent, and convincing evidence exists when the evidence shows the ultimate fact at issue to be highly probable. In re Dependency of K.R., 128 Wn.2d 129, 141, 904 P.2d 1132 (1995). "Because of the highly fact-specific nature of termination proceedings, deference to the trial court is 'particularly important.' " K.M.M. 186 Wn.2d at 477 (quoting In re Welfare of Hall, 99 Wn.2d 842, 849, 664 P.2d 1245 (1983)).

RCW 13.34.180(1)(d) requires the Department to prove that it has expressly and understandably offered or provided "all necessary services, reasonably available, capable of correcting the parental deficiencies within the

foreseeable future." "Necessary services" are those services " 'needed to address a condition that precludes reunification of the parent and child.' " K.M.M., 186 Wn.2d at 480 (quoting In re Dependency of A.M.M., 182 Wn. App. 776, 793, 332 P.3d 500 (2014)). To meet its statutory duties, the Department must at least provide the parent with a referral list of agencies or organizations that provide necessary services. Hall, 99 Wn.2d at 850.

The mother concedes that the parenting assessment recommended that she participate in individual therapy. She also admits that because the court ordered her to follow the parenting assessor's recommendations, participation in this recommended therapy was a "court-ordered service." But, she argues, the therapy requirement was "vague and ill-defined" and therefore was not "expressly" or "understandably" offered to the mother. She challenges the sufficiency of the evidence supporting the trial court's finding to the contrary.

The mother challenges a number of the trial court's findings, including that "[t]he CASA testified she spoke to the mother and the mother understood the services she was required to participate in." We agree that this finding is not supported by the record before us.

Nevertheless, the evidence in the record demonstrates that the Department expressly and understandably offered individual therapy services to the mother. First, there is substantial evidence in the record demonstrating that the Department expressly communicated the parenting assessment recommendations to the mother. During the trial, the mother admitted that she had received a copy of the parenting assessment. Social worker Jones testified

that she spoke with the mother about the results of the recommendation, and the record demonstrates that the Department sent the mother at least eight service letters reiterating the recommendation and supplying a list of mental health providers.

Second, the Department provided an understandable statement of what she was required to do. After the parenting assessment was completed, each service letter was updated to reflect the additional services. Each letter reiterated the parenting assessment recommendations as follows:

> 1. [The mother] to complete her 90 days court ordered UA's with negative results.
>
> 2. [The mother] to engage in a therapy that will guide her in adjusting to life situations as well as support her in developing newer parenting skills that would support her in making the desired changes necessary to parent [H.L.H.]
>
> 3. [The mother] would benefit from having a coaching component incorporated into her visitations to provide immediate feedback on parenting, supervision and child safety.
>    a. If [the mother] does not show improvements with a parent coach in her ability to interact with her daughter using positive parenting skills, or if there is no parent coach available, a more intensive level of parent instruction is recommended. i.e. Parent-Child Interaction Therapy (PCIT).
>
> 4. [H.L.H.] to be returned to [the mother] if housing is acquired and she meets all the UA requirements; she is in compliance with all treatment recommendations and she participates as required in any parenting services.
>
> 5. It is imperative that all treatment providers involved with [the mother] remain in close contact with the Department to ensure that information on progress and compliance is accurate and up-to-date.

Jones told the mother how to participate in the recommended services:

> *Therapy: there are a number of community agencies that provide individual therapy for adults. I'm attaching a list with several

> providers. Please let me know if you need help locating one. I have had several clients receive services through Navos, Sound Mental Health, and Valley Cities.

As indicated, each letter contained a list of mental health providers and their contact information.

The mother maintains that these letters were insufficient. First, she argues that the social workers never specified whether the providers listed could provide the type of therapy recommended by the parenting assessment. This argument is negated by the explicit language of the Department service letters. The Department letters stated that any one of the providers it identified could provide individual therapy for adults, which would meet the parenting assessment recommendation.

Second, the mother contends that the language of the recommendation made it unclear whether she was required to engage in individual therapy with the intention that the therapy assist her in adjusting to life situations or if she was required to engage in specialized therapy designed to address specific situations. For this proposition, she relies on In re M.A.S.C., No. 98905-2, slip op. (Wash. May. 20, 2021) https://www.courts.wa.gov/opinions/pdf/989052.pdf.

In that case, the mother suffered from an intellectual disability. M.A.S.C., slip op. at 1. Because of suspected abuse or neglect, M.A.S.C. was removed from J.C.'s care. Id. at 4. An agreed order of dependency contained a list of 22 items that the Department and the court expected J.C. to do to be reunified with her child. Half of the items listed consisted of the Department's "intention" for services, rather than specific services J.C. needed to complete. Id. at 6-7. For

10

example, item 16 required J.C. to "demonstrate her ability to build healthy connections" with her son, while item 21 required J.C. to "contact the Department at least once per month and meet in person with the Social Worker when possible." Nothing in the order distinguished which items were services and which were intentions or expectations. Id. at 8. When J.C. struggled to meet the listed expectations, the Department sought to terminate her parental rights. Id. at 11. The trial court found that this list was a set of "services" that had been expressly and understandably offered to J.C. Id. at 12.

The Washington Supreme Court reversed the termination and held that where the Department believes a parent has an intellectual disability, it must endeavor to ascertain the extent of the disability and tailor its offer of services to ensure that the offer is reasonably understandable to the parent. Id. at 15. In doing so, the court noted that while "judges are trained to excel in reading comprehension and to draw fine distinctions between subtly different concepts," the average parent is not and certainly not one with an intellectual disability. Id. at 19.

M.A.S.C. is distinguishable. First, unlike the evidence of intellectual disability in M.A.S.C., there is no evidence that the mother has an intellectual disability which impeded her ability to understand the court orders, the parenting assessment, or the service letters. Second, the dispositional order in M.A.S.C. contained a lengthy list of expectations for the mother but not everything listed constituted a "service." By contrast, the mother challenges a single recommendation wherein she was ordered to engage in therapy and then given a

list of providers specifically for that therapy. While the language of the recommendation did include the intention of the therapy — to "guide her in adjusting to life situations as well as support her in developing newer parenting skills that would support her in making the desired changes necessary to parent [H.L.H.]"— the service letter clarified that she was simply required to engaged in individual therapy. Nothing in this language suggests that she was required to undergo specialized therapy.

Substantial evidence supports the trial court's conclusion that the Department expressly and understandably offered services as required by RCW 13.34.180(1)(d).

We affirm.

_Coburn, J._

WE CONCUR:

_____

_____